Petition of **PANAMA TRANSPORT CO.**

**THE CLIO.**

United States District Court
S. D. New York.

Jan. 8, 1952.

Kirlin, Campbell & Keating, New York City, for petitioner.

Myles Lane, U. S. Atty. for Southern District of N.Y., New York City, Edward L. Smith, New York City, for United States of America.

NOONAN, District Judge.

This is an application for a decree awarding the Government Twenty Thousand ($20,000) Dollars, which Panama Transport Company (hereinafter referred to as Panama) stipulated it would pay in consideration of the abandonment by the Government of its asserted lien upon and right of recovery from the awards to certain seamen herein, in order to facilitate settlement, provided that the court should find the lien and right of recovery asserted by the Government to be valid and enforce-able, in whole or in part, but for the settlement given effect by the interlocutory decree dated and entered herein June 8, 1951.

The interlocutory decree provided for the entry of a further decree awarding the United States the sum agreed upon if the Court should find in the Government's favor. The material facts, in addition to those appearing in the record of the trial and of other damage issues, and otherwise, have been stipulated:

The Government filed an intervening petition in the proceedings brought by various seamen, and those by the personal representatives of deceased seamen, to recover for injury, or death, and for lost effects suffered in the disaster giving rise to these proceedings, claiming a lien upon and right of recovery out of any amounts awarded seamen by reason of payments made the seamen or their representatives pursuant to the so-called Second Seamen's Life, Injuries and Effects policies issued by the United States by authority of Title 46, U.S.C.A. §§ 1128 through 1128h.

The Government's intervening petition sought to impress a lien upon the proceeds of any decree in favor of the seamen in the amounts paid as insurer upon the Second Seamen's policies. In the negotiations seeking final settlement of all issues affecting the quantum of the recoveries to be had by the seamen, and their representatives herein, the United States insisted that it be paid the moneys claimed in its intervening petition. This would have required the seamen to accept balances less these amounts, in settlement and satisfaction of their claims. It soon became apparent that the seamen and the personal representatives of deceased seamen, affected by the claims of the United States, would be unwilling to join in any settlement of the limitation of liability issues and other questions remaining open after the decision of the merits herein, upon any basis on which the United States and Panama could also agree, if the asserted lien and right of recovery of the United States were enforced.

The United States was, however, unwilling to make all of the sacrifices necessary to bring about agreements, in view of the

interest of commercial underwriters, and it was agreed that, if the claims asserted by the United States in its intervening petition were valid but not enforced in order to effect a mutually desirable settlement, a fair proportion should be borne by Panama and the underwriters.

It was accordingly stipulated that Panama or its underwriters should pay $20,000 to the United States if the claims of the United States are valid in whole or in part and the interlocutory decree herein so provides.

(The United States maintains (1) that it had a valid enforceable lien upon the recoveries of the seamen's representatives herein by virtue of 50 U.S.C.A.Appendix, § 1292(d) and the statutes incorporated by reference therein which it could have enforced but for the settlement herein, and (2) that it had a right to recover the amount paid the seamen and their representatives, as underwriters upon the Second Seamen's policies out of the recoveries herein quite apart from the statute, and based on the terms of the policy itself.

If the Government can establish its right of recovery on either ground it is entitled to a decree of $20,000 under the provisions of the interlocutory decree.

The authority upon which the government predicates its right to recover is Sec. 1292(d), 50 U.S.C.A.Appendix.[1]

It is the contention of Panama that by the reference in Sec. 1292(d), to "subsection c"[2] the government is precluded from asserting its right unless the damages sought to be recovered will be "directly or indirectly paid by the United States", and in this instance there is no payment directly or indirectly by the United States. Conversely, the Government argues that the language and proper construction of the statute does not so limit its lien and right of recovery, and, further, even admitting it does, the payments in discharge of liability as tortfeasor for the seamen's injuries and deaths are to be indirectly made by the United States.

The question to be resolved, initially, is whether the limiting provision contained in Sec. 1705(c) applies to Sec. 1292(d). The language of Sec. 1292(d) in effect merely provides that the government shall have a lien in the cases and in the manner provided in Sec. 1705(c). The report of the Congressional Committee reporting on the proposed amendment[3] states that the effect of subsection (d) is to make provision similar to that made in Sec. 1705(c), and goes on to describe the rights of the government,

---

1. "(d) The War Shipping Administration shall have the right of intervention and a lien and right of recovery in the cases and to the extent of any payments paid and payable under this section or under Subtitle—Insurance of title II of the Merchant Marine Act, 1936, as amended (sections 1128–1128h of Title 46), in the manner provided in the last paragraph of subsection (c) of section 105 of the Act approved December 2, 1942 * * *. Any amounts recovered under this provision shall be covered into the marine and war-risk insurance fund, War Shipping Administration."

2. "Where any person specified in section 1701(a) of this title, or any dependent, beneficiary, or allottee of such person, or the legal representative or estate of any such entities, after having obtained benefits under this subchapter, seeks through any proceeding, claim, or otherwise, brought or maintained against the employer, the United States, or other person, to recover wages, payments in lieu of

wages, or any sum claimed as for services rendered, or for failure to furnish transportation, or for liquidated or unliquidated damages under the employment contract, or any other benefit, and the right in respect thereto is alleged to have accrued during or as to any period of time in respect of which payments under this title in such case have been made, and in like cases where a recovery is made or allowed, the Secretary shall have the right of intervention and a lien and right of recovery to the extent of any payments paid and payable under this subchapter in such case, provided the cost of such wages, payments in lieu of wages, or other such other right, may be directly or indirectly paid by the United States; and any amounts recovered under this subsection shall be covered into the fund established under section 785 of Title 5." 42 U.S.C.A. § 1705(c).

3. House Report No. 1313, March 30, 1944, U. S. Code Congressional Service, 78th Congress 2nd Session p. 1289.

using the language contained in Sec. 1705 (c), but omitting any reference to the limiting provision, i. e., limiting the government's right to cases of direct or indirect payment by the United States. In this same report there is incorporated a letter to the House Committee Chairman from the Administrator of W.S.A.[4] wherein the Administrator states: "The objective of this amendment is to prevent double recovery of benefits by seamen. There are cases pending wherein War Shipping Administration has paid moneys on account of death or disability and subsequent to such payment suit has been commenced against the owner or operator by the seaman or someone acting on his behalf. The number of these cases are at present few in number but the possibility of double recovery is real and presents a problem which would be met by the proposed amendment."

Thus it would seem clear that the intention of the Congress was to permit the government a lien and right of recovery in such a situation as presented here, where insurance benefits were paid and subsequent to such payments the recipients instituted suit to recover damages.

This latter view is brought into clear focus by a consideration of Article 25,[5] Second Seamen's War Risk Policy, issued by the War Shipping Administration and under which policy, the payments in issue were made. In this case Panama was owner of the CLIO under time charter to the War Shipping Administration.

Thus it appears to this court that the Congress, in enacting Sec. 1292(d) intended its operation to effect an avoidance of double recovery of benefits, and if the government is not allowed its lien and right of recovery here, there would be such a double recovery by the claimants.

It is to be noted, however, that Panama contends there is no double recovery, and argues that the claimants had refused to accept 80% of the stipulated damages in settlement if there were to be any deductions therefrom in the amount of payments made to them under the Second Seamen's Policy. Thus Panama concludes that the amounts paid to the claimants under the interlocutory decree were net, and, in addition to the payment already received under the Second Seamen's Policy, and, therefore, there was no double recovery. However, the amount or percentage the claimants agreed to accept in settlement is not controlling on the question of double recovery, for theoretically there could be a double recovery if the claimants received 1% of their asserted claims in settlement.

Thus the court concludes that the lien and right of recovery asserted by the government which, in order to facilitate settlement, it agreed not to enforce, were valid and enforceable.

4. Id., p. 1293.

5. "Article 25. A. Multiple claims against the United States. It is the intent of the Insurer in the issuance of this Policy to avoid providing or paying any benefit or sum of money for any loss, event or occurrence to the extent that legal liability to pay for the same loss, event or occurrence otherwise exists on the part of the United States of America, the War Shipping Administration, the Administrator, the owner of a vessel under time or bareboat charter to the War Shipping Administration, the operator of a vessel owned by the War Shipping Administration or under time or bareboat charter to it, or the agent of the War Shipping Administration in the operation of such a vessel, and this Policy shall be construed to give effect to such intent. By the acceptance of the insurance protection afforded by this Policy, by the designation of any beneficiary thereunder or by otherwise acting pursuant to the terms of this Policy, the insured, in behalf of himself, his personal and legal representatives, administrators, executors, heirs at law, next of kin, dependents and beneficiaries, acknowledges such intent and agrees to the conditions and provisions of this Policy, including specifically those contained in this Article 25. Similarly, any beneficiary or person to whom any benefit or sum of money is paid under the provisions of this Policy does, by making claim therefor, or by the acceptance thereof, acknowledge such intent and agrees to the conditions and provisions of this Policy, including specifically the conditions and provisions of this Article 25."