**William Thomas BURCH, Libellant,**

v.

**UNITED STATES of America, Respondent.**

**No. 7766.**

United States District Court
E. D. Virginia,

Norfolk Division.
Jan. 28, 1958.

478

William N. Eason and Philip White, Norfolk, Va., for libellant.

L. S. Parsons, Jr., U. S. Atty., and John M. Hollis, Asst. U. S. Atty., Norfolk, Va., for the Government.

WALTER E. HOFFMAN, District Judge.

By his amended libel in personam filed pursuant to the provisions of the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, and 50 U.S.C.A.Appendix, § 1291(a), libellant seeks a decree for compensation from February 3, 1955, for the balance of his life, in accordance with the rate schedules established by the United States Employees' Compensation Act, 5 U.S.C.A. §§ 751–791, 793, under the authority of Public Law 449, 78th Congress, 50 U.S.C.A.Appendix, § 1292(c). It is conceded that libellant is, and has been since February 3, 1946, totally and permanently disabled. He is, and has been for these years, confined to a wheel chair.

The background of this case involves no substantial issue of fact. On February 3, 1946, libellant was employed by the United States through the War Shipping Administration as a Junior. Assistant Purser at a salary of $195 per month on board the S. S. Mesh Knot, a merchant vessel owned and operated by the United States and husbanded by Lykes Bros. Steamship Company in its capacity as general agent. While engaged in the course of his duties, libellant boarded a motor launch to go ashore for the purpose of procuring clearance papers to enable the S. S. Mesh Knot to sail to Baltimore for the purpose of loading war materials to be transmitted to Germany. During the process of launching the lifeboat, it gave way, falling approximately 30 feet, striking the water, and causing the injuries to libellant.

Libellant secured the services of an able and experienced attorney, specializing in the field of admiralty, to represent his interests. After some negotiations, a settlement in the sum of $15,616.50 was agreed upon between the parties on October 31, 1946. The sum of $616.50 represented advances and wages paid to libellant during hospitalization; the actual settlement check issued by Lykes Bros. Company, Inc., being in the sum of $15,000. The United States carried a Marine P. and I. policy and all negotiations for settlement were with counsel for the underwriters. While the settle-

ment check was issued by Lykes Bros., the United States admittedly paid the premium on said marine risk policy. There is some suggestion that the release is not valid because not executed in the presence of the Shipping Commissioner, but it is obvious that there is no merit to this contention.

It is urged that the aforesaid sum of $15,000 constitutes an "insurance benefit" which has now been exhausted under the provisions of Public Law 449, 50 U.S. C.A.Appendix, § 1292(c), reading in part as follows:

"The Administrator, War Shipping Administration, is also authorized to make payments, in accordance with rate schedules provided by the United States Employees' Compensation Act, to a master, officer, or member of the crew of, or any persons transported on, a vessel owned by or chartered to the Maritime Commission or the War Shipping Administration or operated by, or for the account of, or at the direction or under the control of the Commission or the Administration, for permanent total or partial disability as long as such disability resulting from *causes related to the war effort* whether heretofore or hereafter arising exists; *such payments to commence if and when insurance benefits provided by the War Shipping Administration for such person shall have been exhausted.*" (Emphasis supplied.)

From the foregoing it will be noted that Congress has prescribed certain conditions precedent to the payment of supplemental benefits provided for therein. Such prerequisites as may be applicable to this case are:

(1) The disability must result from "causes related to the war effort", and

(2) The supplemental payments are to commence "if and when" insurance benefits provided by W. S. A. for libellant herein have been exhausted. Such language presupposes a prior allowance of insurance for libellant's benefit.

It was not until July 28, 1955, that libellant submitted his claim for such supplemental benefits under Public Law 449, although this law was in existence at the time of libellant's injury on February 3, 1946.

With the advent of World War II, it soon became apparent to Congress that protection should be afforded to officers and members of crews employed by the United States through the War Shipping Administration. Accordingly, in 1943, Congress enacted what is now codified as 50 U.S.C.A.Appendix, § 1291, granting to such individuals all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels. Claims for death, injuries, illness, maintenance and cure, loss of effects, detention or repatriation, or claims arising therefrom not covered by the foregoing, were permitted to be enforced under the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, if said claims were administratively disallowed in whole or in part.

In this setting the Court is requested by libellant to find:

(1) That libellant's original claim for injuries sustained on February 3, 1946, was cognizable under the Second Seamen's War Risk Insurance Act as a "cause related to the war effort", as contrasted with an ordinary "marine risk" for which an action was maintainable under 50 U.S.C.A.Appendix, § 1291(a).

(2) That the $15,000 paid to libellant on October 31, 1946, constituted "insurance benefits" within the meaning of the Act, or

(3) That if the entire $15,000 is not construed to be "insurance benefits", then $5,000 thereof should be interpreted as such, as this is the amount that libellant would have been entitled to receive as a lump sum benefit (8 F.R. 3455, 3458 at 12(a) (3)) under the provisions of the Second Seamen's War Risk Insurance policy, and further that the $10,000 paid by the marine underwriters should be first exhausted, thereby making the ex-

haustion date of the $5,000 occur on or about February 3, 1955, and within two years prior to the institution of this suit, and

(4) That libellant could not file a claim until after the exhaustion of the entire $15,000, as the allowance of such a claim would be tantamount to permitting a double recovery which was expressly prohibited in Petition of Panama Transport Co., D.C., 102 F.Supp. 721, and

(5) That the time for instituting an action under the Suits in Admiralty Act did not commence to run until libellant's administrative claim filed on July 28, 1955, was disallowed in February, 1956.

■■■■ If there is any principle of law essentially well settled, it is that an action under the Suits in Admiralty Act, 46 U.S.C.A. § 745, may be brought *only within two years* after the cause of action arises. This is not a statute of limitations which may be tolled, but constitutes a restriction upon the basic jurisdiction conferred upon the court to entertain an action against the United States. Williams v. United States, 4 Cir., 228 F.2d 129, certiorari denied 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499, rehearing denied 352 U.S. 860, 77 S.Ct. 26, 1 L.Ed. 2d 71; Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813. Furthermore, the two-year period runs from the date of injury rather than from the administrative disallowance of the claim. McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26. Statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign. McMahon v. United States, supra; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058.

■■■ This Court previously sustained respondent's exceptions to the original libel on the ground that the action was time-barred, but the United States Court of Appeals for the Fourth Circuit, without opinion or any comment as to the cor-

rectness of the judgment, vacated same and remanded the cause to the district court with directions that the parties be permitted to file additional pleadings. The same defense has been interposed by respondent's answer to the amended libel. The defense was good before and it is still good. True, the amended libel somewhat clarifies libellant's theory of his case, but the factual situation reveals no change.

■■■ We are cognizant of the fact that legislation of this type relating to seamen's injuries and maintenance and cure is construed with liberality in favor of seamen. McInnis v. United States, 9 Cir., 152 F.2d 387. But the failure to satisfy the administrative regulation specifying the contents of a claim as in McInnis is a far cry from rewriting the statute in such a manner as to create a cause of action where none exists. Libellant's remedy, if any, must rest with Congress. If it was the intention of Congress to permit injured seamen employed by the United States to recover by way of settlement or in an action brought under the Suits in Admiralty Act, a sum in excess of what would have been allowed under the Second Seamen's War Risk Insurance Act, and thereafter permit the recovery to be exhausted as per the rate schedule with the seamen then being permitted to renew their claims, it is for Congress and not the courts to decide. Sympathetic though the court may be with libellant by reason of his physical condition, libellant's claim is untenable in law.

■■■ Manifestly the settlement evidenced by an executed release in the sum of $15,616.50 was treated and accepted as a "marine risk" and not a "war risk". The mere fact that the S. S. Mesh Knot was owned and operated by the United States, and that the accident occurred in the Port of Hampton Roads preparatory to departing for Baltimore where it was to be loaded with war materials for shipment to Germany, does not constitute a "risk of war" or even a "cause related to the war effort" as distinguished from "marine risks and perils". This is clear-

ly evidenced by an examination of the Second Seamen's War Risk policy, Article 3, "Risks and Perils", as amended. True, an amendment effective April 24, 1943, extended the coverage to loss of life, disability, etc., "directly and proximately resulting from stranding, sinking, or *break-up* of the vessel, explosion or fire causing loss of or substantial structural damage to the vessel, or *collision* by the vessel or contact with any external substance (including ice, but excluding water), irrespective of whether the same are caused by risks of war or warlike operations or by marine risks and perils", but this amendment merely lends force to defendant's contention that there is a marked distinction between "marine risks" and "war risks". Libellant insists that he comes within the foregoing amendment as the motor launch practically "broke up" when it "collided" with the water. This is, of course, a play on words and cannot be accepted as a practical interpretation of the amendment.

█ Assuming arguendo that the very nature of libellant's accident resulted from "causes related to the war effort" and was cognizable under the Second Seamen's War Risk Act as amended, the libellant is in no better position. Clearly he was faced with an election to assert his claim for negligence or unseaworthiness under the Suits in Admiralty Act without limitation as to the amount of his recovery for the "marine risk", or to prosecute his claim through administrative channels contending that his injury resulted from a "war risk", in which latter event he would be limited to $5,000, if paid in a lump sum, and $7,500 if paid in installments. It was never the intention of Congress to grant the privilege of both recoveries, and libellant, having elected to proceed under the theory that his injuries resulted from a "marine risk", cannot be heard to complain nine years after his accident.

█ Through a rather ingenious theory the Court is asked to view the $15,000 settlement as an "insurance benefit" under the Clarification Act of 1943, Public Law 17, 78th Cong., 1st Sess., ch. 26, Sec. 2, 57 Stat. 47, as amended by Act of September 30, 1944, Public Law 449, 78th Cong., 2nd Sess., ch. 451, 58 Stat. 758, 50 U.S.C.A.Appendix, § 1292(c), the latter having expired by Sec. 202 of Act of July 8, 1946, ch. 543, Title II, 60 Stat. 501, as of September 1, 1946. The Maritime Commission was authorized, pursuant to 46 U.S.C.A. § 1128(a) to "provide marine insurance and reinsurance against loss or damage by the risks of war and reinsurance against loss or damage by marine risks". The contention is, of course, without merit as such a construction would have the effect of granting the privilege of a double recovery. Just as fallacious is the theory that the settlement figure should be divided, i. e., $10,000 for the "marine risk" and $5,000 for the statutory insurance, and that the $10,000 must be first exhausted before the $5,000 is subjected to the exhaustion rate schedule. There was no discussion between the parties with respect to such a theoretical division at the time of settlement. The release expressly discharges the "United States of America, War Shipping Administration, United States Maritime Commission, Lykes Bros. Steamship Company, Lykes Bros. Company, Incorporated, and United States Lines Company" from all claims "because of an accident occurring on or about February 3, 1946, when a motor launch attached to the Mesh Knot fell into the water in Hampton Roads, Virginia, causing personal injuries and losses to me."

In McMahon v. United States, supra [342 U.S. 25, 72 S.Ct. 19], the Supreme Court held that "the proper construction of the language used in the Suits in Admiralty Act is that the period of limitation is to be computed *from the date of the injury*", and further approved the doctrine set forth in Gregory v. United States, 2 Cir., 187 F.2d 101, applying the same rule to an action for benefits under a Second Seamen's War Risk policy. At the same time the Supreme Court expressly rejected the case of Thurston v. United States, 9 Cir., 179 F.2d 514, strongly relied upon by libellant.

482

We come perforce to the conclusion that there is no merit to libellant's action and the same must be dismissed. It fails for many reasons, including the essential fact that no cause of action ever existed, but it must certainly fail by reason of being time-barred.

Proctors for respondent will prepare an appropriate decree in accordance with this opinion, which is adopted by the Court as its findings of fact and conclusions of law in accordance with General Admiralty Rule 46½, 28 U.S.C.A., and, after presentation to proctor for libellant for inspection and endorsement, the same shall be forwarded to the Court for entry.