**William Thomas BURCH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 7671.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1958.

Decided Dec. 10, 1958.

William N. Eason and Philip White, Norfolk, Va., for appellant.

Robert S. Green, Attorney, Department of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Lester S. Parsons, Jr., U. S. Atty., Nor-

folk, Va., and Samuel D. Slade, Attorney, Department of Justice, Washington, D. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and HARRY E. WATKINS, District Judge.

SOPER, Circuit Judge.

On February 3, 1946, in Hampton Roads, Virginia, William Thomas Burch, a purser on board the S.S. MESH KNOT, a ship owned by the United States, was totally and permanently injured by the negligent fall of a lifeboat which he was attempting to board. More than ten years later, on April 25, 1956, he filed the libel in the pending suit against the United States under the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, to secure a decree that he be paid supplemental benefits for his injury from February 3, 1955, under Public Law 449, September 30, 1944, 50 U.S.C.Appendix, (1946 ed.) § 1292(c), U.S.Code Cong. Service 1944, p. 756.

This statute authorized the Administrator (War Shipping Administration) to make payments in accordance with rate schedules provided by the United States Employees' Compensation Act (5 U.S.C.A. §§ 751–791, 793) to any member of the crew of a vessel owned by or chartered to the Maritime Commission for the War Shipping Administration, or operated by either of them, for disability resulting from causes related to the war effort, so long as such disability should exist, such payments to commence if and when insurance benefits provided by the War Shipping Administration for such person shall have been exhausted.[1] The libellant was covered by a Second Seaman's War Risk policy provided by the War Shipping Administration under the War Risk Insurance Act of 1940, 54 Stat. 689, as amended by the Clarification Act of 1943, 57 Stat. 47, 46 U.S.C. (1946 ed.) § 1128 et seq. This policy entitled an injured seaman under certain conditions to disability payments ranging from $5000 to $7500 in the aggregate, and the subsequent act, Public Law 449, heretofore mentioned, was passed to provide additional benefits for claimants who had previously received and exhausted the proceeds of the policy. Section 1128d of the War Risk Insurance Act of 1940, as amended, provided that in the event of disagreement as to a claim for insurance, a suit in admiralty might be brought against the United States in the District Court of the United States in the district of the claimant's residence, to be heard and determined according to the provisions of the Suits in Admiralty Act. Section 745 of this Act provides that such suits may be brought only within two years after the cause of action arises. A similar limitation is found in Article 22 of the Second Seaman's War Risk policy.

The crucial question for decision is whether prior to the pending suit the libellant had made claim for and received payments under a Second Seaman's War Risk policy, which payments were exhausted, for otherwise the libellant had no standing under Public Law 449. The District Judge, finding that the libellant had never made claim for or received benefits under such a policy, concluded that he was not entitled to the additional benefits claimed and dismissed the libel.

The libellant had in fact been paid $15,614.50 on October 31, 1946, on account of his injuries. Of this sum $614.50 represented wages paid to him during hospitalization and $15,000 were paid on account of the physical disabilities occasioned by the accident. He contends that the larger sum, or at least part of it, was paid by the War Shipping Administration under the war risk insurance policy. His theory is that although this amount was paid to him in a lump sum it should be treated as if paid to him in monthly instalments from the date of the injury according to the rate schedules of the United States Employees' Compensation Act, in which event it

[1]. Cessation of hostilities was proclaimed at twelve o'clock noon on December 31, 1946, Proclamation No. 2714, 50 U.S. C.A.Appendix, § 601 note.

would have been exhausted on February 3, 1955, and he would become entitled to receive the additional benefits provided by Public Law 449. On this theory he filed a claim for supplemental benefits on July 28, 1955, and when it was denied he instituted the pending suit.

The evidence shows that the ship was owned by the United States and was being operated for the United States by Lykes Brothers Steamship Company at the time of the accident. The accident occurred when a lifeboat on the ship was negligently allowed to fall 30 feet and crash into the sea as the libellant was in the act of entering it. As the result of the negligence in launching the lifeboat the libellant suffered permanent and total disability.

On October 3, 1946, after the accident, a settlement took place under which the libellant received the sums mentioned and executed a release of all claims on account of the accident to the United States of America, War Shipping Administration, Lykes Brothers Steamship Company, Inc., Lykes Brothers Company, Inc., and United States Lines Company.

During the war two kinds of policies of insurance covering accidents to seamen on a government ship were in effect. (1) Marine Protection and Indemnity liability policies written commercially by underwriters for which the United States paid the premium. These policies amongst other things protected the government in case of suits by seamen under the Jones Act, 46 U.S.C.A. § 688, for damages on account of injuries caused by negligence. (2) The Second Seaman's War Risk policy provided by the War Shipping Administration, as above described, which covered amongst other things accidents to seamen due to war risks irrespective of negligence or unseaworthiness. These policies were not intended to provide double coverage. On the contrary, paragraph (d) of Public Law 449, 50 U.S.C.Appendix, § 1292(d), provided that if the War Shipping Administration had paid moneys on account of death or disability under a Second Seaman's War Risk policy, it should have the right of intervention and the right of recovery in a subsequent suit brought against the United States to recover damages for the death or disability of the seaman. It was also expressly provided by Article 25 of the Second Seaman's War Risk insurance policy that it was the intent of the insurer to avoid paying any benefit or sum of money for any loss to the extent that legal liability to pay the same loss otherwise exists on the part of the United States as owner or operator of a vessel, and that the policy should be construed to give effect to such intent. It was also provided that if any final judgment or award was obtained by any person against the United States as the owner or operator of a vessel by reason of the loss of life or disability of the insured, the amount payable under the insurance policy should be reduced by the amount of the final judgment or award. See Petition of Panama Transport Co., D.C.S.D.N.Y., 102 F. Supp. 721.

The libellant made no claim under the Second Seaman's War Risk policy. Indeed he testified that he had no knowledge of the existence of the policy. He did make claim, however, against the agents of the ship and this claim was taken up with the underwriters of the P. & I. insurance and resulted in the settlement above described. In the negotiations leading to this settlement, libellant was represented by a competent attorney with long experience in admiralty litigation.

In view of these facts the District Judge had no choice but to dismiss the libel. Since the libellant proceeded against the United States and its agents as the owner and operator of the ship and settlement was made under the terms of the P. & I. policy, and since he did not make claim under the Second Seaman's War Risk insurance policy, there is no basis for his present claim for supplemental benefits. There is clearly no ground for his contention that the payments by the commercial underwriters under the policy issued by them should be treated as if made under the policy

furnished by the War Shipping Administration. Having reached this conclusion there is no need to consider the additional defenses that disability was not caused by risk of war within the meaning of the Second Seaman's War Risk policy, or that the libellant's claim is barred by limitations.

Affirmed.