**Ronald G. KING**

v.

**Kyle C. TESTERMAN.**

**Civ. A. No. 4481.**

United States District Court
E. D. Tennessee, N. D.

Feb. 8, 1963.

Paul T. Gillenwater, Knoxville, Tenn., for plaintiff.

Robert S. Young, Jr., Louis C. Woolf, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This action was instituted by Ronald G. King as a common law action to recover damages sustained by him as a result of a water skiing accident on the Fort Loudon Lake in June, 1961. Motion was filed to dismiss by the defendant, Kyle C. Testerman, and without the Court passing on that motion, counsel for the respective parties submitted an order which they had approved transferring the action from the law side of the docket in this Court to the admiralty side of the docket where it is at the present time.

As indicated at various times during this trial, the Court has had considerable trouble with the question of jurisdiction. There was no collision. No boat was libeled. The accident did,

however, take place on navigable waters and a boat was being used as a tow in the skiing accident which resulted in the injury. The operator was charged with negligence in its handling. The concurrence of the use of a boat in connection with the accident and the fact that it occurred on navigable waters constrains the Court to the belief that admiralty jurisdiction is thereby established. But the matter is by no means free from doubt. See an opinion written by Senior Judge Maris, Third Circuit, in Jardine v. Walling, 185 F.2d 662; Volume 2, American Jurisprudence 2d., Admiralty, Secs. 82 and 111; Godinez v. Jones, (D. C.Puerto Rico, Dec. 23, 1959), 179 F. Supp. 135; Macguire v. City of New York, 192 F.Supp. 866 (D.C.1961); United States v. Matson Navigation Company, 201 F.2d 610 (C.A.9).

In response to a question of the Court, counsel for respondent stated that he was of the opinion that the case was one in admiralty and that this Court had jurisdiction. The Court recognizes the fact that if it does not have jurisdiction of the subject matter, agreement of counsel cannot confer jurisdiction. Jurisdiction of the person may be waived by counsel but jurisdiction of the subject matter cannot.

After consideration of this question and pursuant to the joint opinion of counsel for the respective parties, the Court has concluded that jurisdiction exists and will, therefore, decide the case on the merits.

▮▮▮ Before mentioning the facts involved in the case, a few rules should be pointed out which exist in an admiralty case. One is that a person who sues does not assume the risk of injury, as do persons under certain situations in common law actions. That is to say, admiralty law does not recognize the assumption of risk doctrine which grew up under the old common law. Another rule is that contributory negligence does not bar a recovery. Proximate contributory negligence does bar a recovery in common law actions. The comparative negligence rule in some form seems to

exist in the admiralty law. A litigant does not have a right to a jury if his case is on the admiralty side of the docket, where as if his case is on the law side of the docket he has a right under the Federal Constitution to a jury with certain exceptions not pertinent to this suit.

Going now directly to the facts involved in this accident, young King, who in admiralty is designated as the libellant, some 22 years of age at the time of the accident and who was unmarried at that time, and Mr. Kyle C. Testerman, who is designated in admiralty as respondent, decided to go on a boat outing over the weekend. The evidence is not clear as to when this decision was made, but that is not material to the rights of the parties, it probably having been made on Saturday preceding the Sunday on which the accident occurred. The respondent's wife accompanied him and a girl friend accompanied libellant. Arrangements were made by libellant to procure a boat from his brother-in-law, a Mr. Kendrick. It was an Owens Craft Cruiser about 23-feet in length with an inboard motor. Libellant also procured the water skis.

There is some conflict in the testimony as to the skis so procured. Libellant claims that the skis which have been filed as an exhibit were the ones that he was using at the time of the accident, whereas respondent insists that the skis which he was using were "Trickster" skis which are shorter than the ones filed as an exhibit and which require more technical ability and experience in their use.

Pursuant to this arrangement the boat was launched on the lake on Saturday with these people aboard. Saturday evening and Saturday night were uneventful, but on Sunday morning they started towards Fort Loudon Dam from what has been described as the Duncan Boat Dock or the Boat Club of Knoxville. In the beginning, libellant was the operator of the boat and respondent was the skier. Having gone down the lake in the direction of Fort Loudon Dam and having returned to a point in

the lake where respondent became tired of skiing and libellant desiring to ski, the two exchanged places, with respondent going to the helm of the boat and the libellant taking over the skis.

The respondent, when he became the operator, started the boat in the usual way but libellant was not able to get his skis out of the water, nor was he able on the second try to get on top of the water, but the third try was successful, whereupon the boat continued in a westward direction towards Fort Loudon Dam for a period of five to eight minutes, according to the testimony of libellant.

Libellant is an experienced skier; he is an experienced boat operator. Although libellant's testimony indicated some doubt as to the experience and competency of respondent as a boat operator, the testimony of respondent and his actions on the witness stand indicate to the Court that he, too, was an experienced skier and an experienced boat operator.

Libellant claims that the respondent was negligent in the operation of the boat in that he did not arrange signals with him to be given to the libellant for his skiing maneuvers. If respondent failed in that respect, libellant was also derelict or negligent.

Libellant says further that respondent was negligent in failing to have a person on the back of the boat to give signals to the skier of the maneuvers and direction that the boat was to take. Again, if respondent was negligent in that respect, libellant was equally negligent.

In that connection, Mrs. Testerman was on the rear of the boat at the time of the accident but testified nothing had been said to her about signals.

On the question of signals, libellant states that he saw the boat turn to the left before the accident; that he saw the racing boats coming in the opposite direction, so if the respondent was negligent in failing to give signals, since the signals were only to advise the libellant of the direction the boat was to take and since the libellant saw the turn that was being made, the Court fails to see how the failure to give signals caused this unfortunate accident.

There is a sharp dispute in the testimony as to the course of the boat at the time of the accident. There is a sharp dispute in the testimony as to the location of the speed boats on the lake at the time of the accident. Libellant stated that at the time and immediately prior to the time of the accident, respondent was making a sharp turn with the boat to the left and that the waves of the boat plus the waves of the speed boats across all of which he undertook to go, caused him to fall and injure his eye.

Respondent stated that he was going on a straight course down the lake in the direction of Fort Loudon, which has been described as a westward direction; that the course of the boat was not changed from a straight line, or materially changed from a straight line; that he did not turn to the left or undertake to turn to the left; that at the time of the spill the libellant was going over the crest of the waves either made by the boat respondent was operating or made in conjunction with the waves made by the speed boats on the lake, libellant fell for a third time and that this fall presumably caused the injury which is the basis of his suit.

Respondent states that at the time libellant fell, the nearest speed boats were 50 yards away, that there was no object in the area that involved danger to the libellant, that the waves of these speed boats are comparatively slight and that they do not exceed six inches in height.

The question arises as to who is right or who is wrong in the description of this accident.

The trier of the facts, which is the Court in this case, must weigh the testimony. If a jury had been sitting, the jury would have weighed the testimony. Libellant and respondent were friends and social acquaintances. This record indicates that each one of them is a person of good character.

338

There is another rule of law that comes into play in an admiralty case, which is that the burden of proof is upon the libellant to show fault or negligence upon the part of the respondent and that such negligence was the proximate cause of the accident and the resulting injuries. That burden of proof must be carried by what is known as the preponderance of the evidence or what is known as the greater weight of the evidence.

In the opinion of the Court, and the Court finds, that libellant has failed to carry the burden of proof and has failed to show by the preponderance of the evidence that the respondent was negligent and that such negligence was the proximate cause of the accident and his injuries.

This was an unfortunate accident, as are all accidents that result in injury. They are more unfortunate when they result in injury to person rather than property. Although the injuries that resulted from this accident were serious they were not nearly as serious as they could have been. The proof shows that the operation on libellant's eye was very successful and that the greatest percentage of disability that exists as a result of the accident to the body as a whole is two percent permanent partial.

If the Court is wrong in its conclusion that the proof fails to show fault or negligence upon the part of the respondent, the Court is further of the opinion and finds that if it could be said the respondent was guilty of negligence, that the libellant was likewise guilty of negligence under his own testimony in that he knew that the lake, along with the respondent, would be used by racing boats in an event described in this record as a marathon race and that those boats were periodically passing by the boat involved in this accident at high rates of speed. He testified that he considers respondent to be an inexperienced boat operator but that he thought he was a good operator when respondent took over the operation of the boat under consideration. Libellant stated that water safety rules require signals between the skier and boat operator and they did not have signals. There is proof to the contrary as to that requirement. The last witness stated positively that an experienced skier could protect himself without signals between himself and the boat operator.

Libellant also stated that safety required a person on the rear of the boat to give signals to the skier which were to be taken from the boat operator, that none existed at the time of the accident. Mrs. Testerman, as previously indicated, was on the rear of the boat but she was not there to give signals to the skier from the boat operator, as a signal system had not been worked out prior to the time of the accident.

Let an order be presented in conformity with these findings.