Ernest Wilmer CROSSON, III, and Marie
Louise Crosson, his wife, Appellees,

v.

Maxwell VANCE, Appellant.

No. 73-1222.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1973.

Decided Sept. 27, 1973.

John J. O'Connor, Jr., Baltimore, Md.
(O'Connor & Preston, Baltimore, Md.,
on brief), for appellant.

L. Robert Evans, Towson, Md. (Walter Litvinuck, Chester, Md., on brief),
for appellees.

Before HAYNSWORTH, Chief Judge,
and RUSSELL and FIELD, Circuit
Judges.

HAYNSWORTH, Chief Judge:

After denial of a motion to dismiss for lack of jurisdiction, we allowed an interlocutory appeal to consider whether an action for personal injuries brought by a water skier against the operator of a towing motor boat was within the admiralty jurisdiction. After consideration, we find no substantial federal interest in this kind of controversy and little connection with the traditional concerns of admiralty. Since the Supreme Court has recently indicated disapproval of the exercise of jurisdiction in a similar case we reverse.

The plaintiff was skiing on Maryland navigable waters tributary to Chesapeake Bay. The defendant, operating the towing motor boat, ran it into shoal waters in consequence of which the plaintiff was injured, or so it is alleged in the complaint.

The admiralty jurisdiction in England and in this country was born of a felt need to protect the domestic shipping industry in its competition with foreign shipping, and to provide a uniform body of law for the governance of domestic and foreign shipping, engaged in the movement of commercial vessels from state to state and to and from foreign states. The operation of small pleasure craft on inland waters which happen to be navigable has no more apparent relation to that kind of concern than the operation of the same kind of craft on artificial inland lakes which are not navigable waters.[1]

Long ago, however, with respect to admiralty tort jurisdiction, the Supreme Court in The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125, adopted a simplistic locality test. If the tort was committed on navigable waters it was within the admiralty jurisdiction. If the injury was suffered on land, even though the offending instrument was a vessel afloat on navigable waters, the

---

1. Navigability, of course, turns upon the condition of the waters in their natural state before the construction of the dams and not on the fact that the lakes in their present condition support large numbers of pleasure craft.

matter was beyond the jurisdiction of admiralty.[2] The shore line was thus made the bright white jurisdictional determinant without need to reckon with other matters.

This state of affairs, with respect to damages sustained on the seaward side of the shore, was largely continued until December of last year when the Supreme Court decided Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454. In that case, it appeared that a small jet powered airplane went down in the waters of Lake Erie after its engines had ingested some birds just after take-off and while the plane was still over the runway. Since the impact, with the ensuing damages to the plane, was in the navigable waters of Lake Erie, the plaintiff contended that there was admiralty jurisdiction within *The Plymouth's* locality rule. The Supreme Court, however, modified *The Plymouth's per se* rule, holding that, in addition to the locality test, there must be shown some connection "with traditional maritime activity." The land based plane was not designed for or capable of operation on water, and the Supreme Court concluded that there was no admiralty jurisdiction of claims growing out of crashes of land based aircraft on flights between points in the continental United States, even though the crash was in navigable waters. The opinion indicates, too, that admiralty jurisdiction would not reach swimming accidents in which one swimmer is injured by another or by contact with some obstruction on the bottom.

The Supreme Court, of course, did not deal immediately with the problem which confronts us, but it did reject a simplistic locality test. The states, after all, are perfectly capable of resolving such controversies as this out of their existing bodies of laws, and are currently doing so. While federal rules of the road, requirements of lights and similar things, must be applicable to the operation of small pleasure craft in navigable waters, there is no impediment to the application of those requirements by the state courts, and we can perceive no apparent federal interest in providing a forum or a uniform body of law for the adjudication of claims growing solely out of the operation of pleasure craft.

An exercise of the jurisdiction in a case such as this means not only a different forum and a different body of substantive law, depending solely on the locale of the accident within a given state, it perhaps also means resort to a different body of substantive law depending upon the survival of the victim. If he dies as the result of the accident on navigable waters within a state's territory, so that the Death on the High Seas Act[3] does not apply, admiralty must borrow the state's wrongful death act. When that is done, it has been held that the state's body of substantive law applicable to wrongful death claims comes with it, so that contributory negligence, an absolute defense under state law, will bar a wrongful death claim in admiralty, based upon negligence, despite the general admiralty rule of mitigation of damages. Niepert v. Cleveland Electric Illuminating Company, 6 Cir., 241 F.2d 916; Curry v. Fred Olsen Line, 9 Cir., 367 F.2d 921. *See* The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358; Pleasure-Boating and the Admiralty Jurisdiction, 10 Stan.L. Rev. 724, 735.

All of this seems to us rather senseless when any reason for federal concern for this kind of litigation is so vague and uncertain.[4]

Our difficulty, however, stems from the fact that the Supreme Court in *Executive Jet Aviation* did not reach this problem. It held that, in addition to the

---

2. This holding of *The Plymouth* was overturned, of course, by The Admiralty Extension Act, 46 U.S.C.A. § 740.

3. 46 U.S.C.A. § 761.

4. The arguments against the existence or exercise of admiralty jurisdiction in pleasure boat accident cases are marshalled in Stolz, Pleasure Boating and Admiralty: Erie at Sea, 51 Cal.L.Rev. 661.

locale test, there was no admiralty jurisdiction if there was no connection "with traditional maritime activity." For the purposes of that case, it was not required to go further and decide whether maritime activity must be of a commercial nature, and its failure to reach out to decide the question which now confronts us must be viewed against a background of treatment of the operation of pleasure craft as a maritime activity within the admiralty jurisdiction. In Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319, the Supreme Court proceeded upon the assumption that a collision between two motor boats in the Ohio River was within the admiralty jurisdiction. It did not discuss the matter in terms of the problem presented here, but it could not have held the pleading allowable, as it did, unless there was jurisdiction in admiralty. Indeed, in Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363, it was held that the owner of a pleasure vessel, who, himself, was not at fault or aware of any defect in it, was entitled to a limitation of liability to the value of the vessel under the traditional admiralty rule. Again, the Supreme Court did not focus on the problem in the terms presented here, but its assumption of admiralty jurisdiction was essential to its holding. In similar fashion, this court has decided cases arising out of small pleasure boat accidents under admiralty rules upon the assumption that admiralty jurisdiction existed. Rowe v. Brooks, 4 Cir., 329 F.2d 35.

If there were no more in *Executive Jet Aviation,* we could not construe its decision or the opinion as a rejection of the earlier assumptions in Levinson v. Deupree and Coryell v. Phipps. What is "traditional maritime activity," as those words were used in the opinion in *Executive Jet Aviation,* is open to question in the context of the operation of small boats and injuries to water skiers. In its rejection of the strict locality test, however, the Court said:

"In cases such as these, some courts have adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and traditional forms of maritime commerce and navigation." [5]

It documented that statement by citations in the footnote to a case involving an injury to a swimmer by a surfboard and to a case, King v. Testerman, E.D. Tenn., 214 F.Supp. 335, involving injuries to a water skier, a circumstance which was specifically noted. King v. Testerman is indistinguishable from this case. The plaintiff alleged that while skiing he injured his eye when thrown by rough waters encountered as a result of the negligence of the operator of the tow boat when he made radical, unsignalled turns. If, otherwise, there would be some doubt about the Supreme Court's rejection of its earlier assumptions in *Levinson* and *Coryell,* it expressed explicit disapproval of the exercise of the admiralty jurisdiction in a case precisely like this, involving injuries to a water skier in which the skier charges the operator of the tow boat with negligence. It seems clear to us, therefore, that we could not uphold the exercise of the jurisdiction in this case without subjecting ourselves to the clear expression of criticism of another court for doing just that.

For our present purposes, therefore, we need not speculate whether the Supreme Court's opinion in *Executive Jet Aviation* would foreclose resort to admiralty in any case involving the operation of small pleasure craft, though the *Stoltz* article [6] contains impressive argument for reaching that result. We need only go as far as the Supreme Court's explicit direction to hold that admiralty jurisdiction does not reach a claim for personal injury by a water skier against the allegedly negligent operator of the tow boat.

5. 409 U.S. 255–256, 93 S.Ct. 498.

6. See footnote 4, *supra.*

On the basis of the Supreme Court's opinion in *Executive Jet Aviation,* we conclude that the motion to dismiss for want of jurisdiction should have been granted. The order will be reversed and the case remanded with directions to dismiss the complaint.

Reversed.