**Guy B. HARTMAN, as Administrator of the Estate of Martha Venita Hartman, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 79–2461–5.**

United States District Court,
D. South Carolina,
Rock Hill Division.

July 14, 1981.

Robert R. Carpenter, Roddey, Carpenter & White, Rock Hill, S. C., for Guy B. Hartman, etc.

J. D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., Rosemary A. Denson, Atty., Torts Branch-Civ. Div., Dept. of Justice, Washington, D. C., Capt. Stan Barnett, Counsel Army Corps of Engineers, Charleston, S. C., for the U. S.

## ORDER ON MOTION TO DISMISS

HEMPHILL, Senior District Judge.

The Government's motion to dismiss this action brought under the Federal Tort Claims Act[1] raises essentially one issue: do the facts as alleged by plaintiff Hartman constitute a maritime tort cognizable exclusively within the admiralty jurisdiction[2] of this Court? Because they do, this action is time-barred by reason of the applicable and strict two year statute of limitations,[3] and the motion to dismiss for want of subject matter jurisdiction must be granted.

While this dispositive question was easily phrased in the paragraph above, its answer requires the more difficult consideration of a number of not so facile issues of admiralty law, such as the exclusiveness of admiralty jurisdiction within the context of the facts below; the application of the appropriate test of admiralty tort jurisdiction to those same facts; the navigability, for purposes of admiralty jurisdiction, of Lake Wy-

1. 28 U.S.C. § 1346(b) provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *See also* 28 U.S.C. § 2671 *et seq.*

2. Suits in Admiralty Act, 46 U.S.C. §§ 741–752; *see also* 28 U.S.C. § 1333.

3. 46 U.S.C. § 745 provides in pertinent part: "Suits as authorized by this chapter (suits in Admiralty) may be brought only within two years after the case of action arises." The stringency of this statute of limitations was expressed in *Burch v. United States*, 163 F.Supp. 476, 480 (E.D.Va.1958) as follows:

If there is any principle of law essentially well settled, it is that an action under the Suits in Admiralty Act . . . may be brought *only within two years* after the cause of action arises. This is not a statute of limitations which may be tolled, but constitutes a restriction upon the basic jurisdiction conferred upon the Court to entertain an action against the United States. Furthermore, the two year period runs from the date of injury rather than from the administrative disallowance of the claim. (citations omitted)

The complaint herein alleges plaintiff's decedent died on May 14, 1977; the complaint was filed December 20, 1979.

lie, a sizeable body of water lying upon the boundary separating North and South Carolinas; and the inclusion of pleasure boating within the ambit of admiralty jurisdiction. The disposition of these issues is discussed below.

## THE TORT

This case arises from the death of Martha Venita Hartman on the waters of Lake Wylie. The complaint alleges that on or about May 14, 1977 at approximately 9:45 p.m., during the hours of darkness, plaintiff's decedent was riding as a passenger in a speedboat when suddenly and without warning the speedboat smashed into a concrete piling or bridge support of the old Buster Boyd Bridge. The old bridge had been partially demolished and replaced by a new structure without removal of the support pilings for the original bridge. Plaintiff contends the death of his decedent was proximately caused by the negligence of the United States Coast Guard and the United States Army Corps of Engineers in failing to remove the unused bridge supports and in failing to light, mark or otherwise warn boaters of their presence.

## NAVIGABILITY OF LAKE WYLIE

■ The admiralty jurisdiction of the district courts of the United States[4] depends, in the first instance, upon the navigable character of the body of water in question, that is to say, whether such body of water is in fact navigable in interstate or foreign commerce. *Livingston v. United States,* 627 F.2d 165, 167 at n. 2 (8th Cir. 1980), *citing The Propeller Genesee Chief v. Fitzhugh,* 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851). The time-honored definition of navigable waters was espoused by the Supreme Court over a century ago:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, *or are suscepti-*

ble *of being used,* in their ordinary condition, as highways for commerce, over which trade and travel are *or may be conducted* in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the Acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is *or may be carried on with other States,* or foreign countries in the customary modes in which such commerce is conducted by waters." (emphasis supplied)

*The Steamer Daniel Ball v. United States,* 77 U.S. (10 Wall.) 557, 583, 19 L.Ed. 999 (1971). The Courts return again and again to this passage from the *Daniel Ball* in fashioning derivations of it to suit the purposes of the particular cases before them. In *Adams v. Montana Power Company,* 528 F.2d 437 (9th Cir. 1975), it appears that a drowning occurred on a 25 mile stretch of river wholly within the State of Montana and completely obstructed by dams at either end, which stretch was used only by non-commercial fishermen, water skiers and pleasure boaters. The Court, citing *The Daniel Ball* and *The Propeller Genesee Chief,* held:

> A waterway is navigable provided that it is used *or susceptible of being used* as an artery of commerce. Neither non-commercial fishing nor pleasure boating nor water skiing constitutes commerce.
>
> \* \* \* \* \* \*
>
> It follows that admiralty jurisdiction need and should extend only to those waters traversed *or susceptible of being traversed* by commercial craft. (emphasis supplied)

528 F.2d at 439.

■ Lake Wylie is an interstate body of water, comprising a portion of the border

---

**4.** 28 U.S.C. § 1333 provides in pertinent part:

The District Courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

between the two Carolinas. A segment of the Catawba River, it is a sizeable body, capable of promoting travel and commerce between the two states. That it actually does so at the present time is not shown on the record. The Office of the Chief of Engineers, Department of the Army, issued a report in 1975 on the navigability of this lake, in which it is stated:

> The waters of Lake Wylie forming part of the boundary between North Carolina and South Carolina are in fact navigable at the present time. According to coast guard reports these waters are used, in their present improved condition, as a highway over which commerce is or may be carred.

The criteria for an administrative determination of navigability such as the above are set forth in 33 C.F.R. Part 329, pp. 717–722. As those regulations note, "although conclusive determinations of navigability can be made only by Federal Courts, those made by Federal agencies are nevertheless accorded substantial weight by the courts." Such a determination is certainly an appropriate exercise of the regulatory authority of the Corps of Engineers under the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401, 403, 404, 407 and 408. *P. F. Z. Properties, Inc. v. Train*, 393 F.Supp. 1370 (D.D.C.1975). As such, this Court accords the Corps' determination in the instant case, that Lake Wylie is indeed navigable, the weight it deserves.

The Fourth Circuit in the case of *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745 (1975), dealt with an explosion of a motorboat while being operated on Lake Gaston, a man-made lake partly in Virginia and partly in North Carolina. There the Court found "nothing to suggest that Lake Gaston, though navigable, supports any substantial commercial activity" and, further, that "the vessel involved was purely a pleasure craft and was being utilized for the pleasure and recreation of its occu-

pants." 528 F.2d at 747. The accident was nevertheless found to have occurred on navigable water.

This Court holds Lake Wylie is susceptible of being traversed by commercial craft between states and is therefore navigable for purposes of invoking admiralty jurisdiction. In so holding, the Court is mindful that the Western District of North Carolina has declared in an unpublished opinion the Lake Norman area of the Catawba River unnavigable within the meaning of admiralty jurisdiction. *See Jones v. Duke Power Company*, C.A. No. 80–087 (unpublished, W.D.N.C. filed September 17, 1980).[5] But the situation in *Jones* is apposite to the circumstances of the *Adams* case. The portion of the Catawba River involved in *Jones*, Lake Norman, is obstructed by dams at either end and lies wholly within one state. Lake Norman is not, therefore, susceptible of being traversed by commercial craft between states. Our case stands on a different footing. It is not the Catawba River which this Court declares navigable, but the interstate Lake Wylie only. That lake, not the river, appertains to the incident here in question.

## ADMIRALTY JURISDICTION

The law of admiralty tort jurisdiction was the subject of recent pronouncement by the Supreme Court in the case of *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Until *Executive Jet*, the traditional determination of whether a tort is maritime so as to invoke the admiralty jurisdiction of the federal courts depended upon the locality of the wrong. *See The Plymouth*, 3 Wall. 20, 18 L.Ed. 125 (1866); *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). Now-retired Chief Judge Haynsworth, in the first of his trilogy of maritime tort cases[6] all pertinent to the one at bar, explained the "simplistic locality test" thusly:

---

**5.** *But see United States v. Mecklenburg Abattoir and Locker Plant, Inc.*, Cr. No. 72–87 (unpublished, W.D.N.C., filed November 21, 1972) in which the same Court found: "That the Catawba River is a navigable water of the United States descending to the sea."

**6.** *Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973); *Richards v. Blake Builders Supply, Inc.*, supra; and *Lane v. United States*, 529 F.2d 175 (4th Cir. 1975).

If the tort was committed on navigable waters it was within the admiralty jurisdiction. If the injury was suffered on land, even though the offending instrument was a vessel afloat on navigable waters, the matter was beyond the jurisdiction of admiralty.

*Crosson v. Vance*, 484 F.2d 840–841 (4th Cir. 1973).

*Executive Jet* changed things. In that case a jet aircraft struck and ingested a flock of sea gulls upon takeoff from an airport in Cleveland, Ohio. The ingestion of the birds into the plane's engine resulted in a loss of power. The craft descended and settled in Lake Erie just off the runway. The district court dismissed the complaint, holding the suit not cognizable in admiralty. The Sixth Circuit affirmed on the ground the alleged tort occurred on land before the aircraft reached Lake Erie.

Noting the "perverse and casuistic borderline situations that have demonstrated some of the problems with the locality test of maritime tort jurisdiction", 409 U.S. at 255, the Supreme Court held, at least in the context of aeronautical torts,[7]:

> ... we conclude that the mere fact that the alleged wrong "occurs" or "is located" on or over navigable waters— whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a "maritime tort." It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activities. We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary.

409 U.S. at 268, 93 S.Ct. at 504.

■ This Court having answered in the affirmative the initial question whether Lake Wylie, the body of water upon which the alleged tort undeniably occurred, is navigable, the "locality" portion of *Executive Jet's* modified test is met. The tort was committed and the injury sustained upon navigable water. We turn to the question whether the wrong in this case "bear[s] a significant relationship to traditional maritime activity." *Ibid.*

■ Plaintiff urges that claims arising out of a pleasure boat mishap in waters such as Lake Wylie, which are used by and large for recreational activity, fall outside admiralty jurisdiction under the *Executive Jet* decision because there is no significant relationship in such an instance to traditional maritime activity. This argument was forcefully and appealingly made in Professor Stolz' Pleasure Boating and Admiralty: Erie at Sea, 51 Cal.L.Rev. 661. The Court is constrained, however, by the force of authority to reject it.

The Second Circuit in *Kelly v. United States, supra* at note 7, a case which neither party cited to this Court but which is on all fours with several crucial issues in the instant case, described the state of the law in the various circuits, including the Fourth, which have faced the pleasure boating argument thusly:

> Also, the fact that a recreational sailboat was involved in this case does not necessarily preclude admiralty jurisdiction. There has been debate on the subject, but the Circuit Courts have generally not taken the view, urged by at least one commentator [Stolz], that admiralty jurisdiction is closed to all claims arising from pleasure boat accidents. On the contrary, admiralty jurisdiction has been upheld in a variety of recent cases involving pleasure boat accidents. *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973) ("a

---

7. The holding has been generally applied by the lower federal courts to marine torts as well. *See, e. g., Kelly v. United States*, 531 F.2d 1144 (2d Cir. 1976); *Crosson v. Vance, supra*. This is probably the result of the Supreme Court's difficulty with the locality rule in general. The Court disclaimed in *Executive Jet*: "Despite the broad language of cases like The Plymouth, the fact is that this Court has never explicitly held that a maritime locality is the sole test of *admiralty tort jurisdiction*." (emphasis supplied and citations omitted) 409 U.S. at 257, 93 S.Ct. at 499.

mini ship-to-shore gun battle in the Mississippi River" between "fleeing deer poachers afloat" in a 15-foot outboard runabout and "outraged defenders of a private hunting preserve ashore"); *St. Hilaire Moye v. Henderson,* 496 F.2d 973 (8th Cir. 1974) (pleasure boat accident on a navigable portion of the Arkansas River); *Oppen v. Aetna Ins. Co.,* 485 F.2d 252 (9th Cir. 1973) (oil spill in the Santa Barbara channel resulting in damage to pleasure boats). This Court has recently agreed that suits involving pleasure craft are not precluded by *Executive Jet* from admiralty jurisdiction, unless the wrongs alleged do not "bear a significant relationship to traditional maritime activity." *Szyka v. United States Secretary of Defense, supra* [525 F.2d 62 (2nd Cir. 1975)] Although the Fourth Circuit appeared initially in *Crosson v. Vance,* 484 F.2d 840 (4th Cir. 1973) to have adopted a somewhat broader interpretation of *Executive Jet,* holding that admiralty jurisdiction did not reach the negligence claim of a water skier against a towing motor boat operator, the Circuit has more recently ruled that the negligence claim of a pleasure boat passenger is cognizable in admiralty. *Richards v. Blake Builders Supply,* 528 F.2d 745, Docket No. 74–2010 (4th Cir. 1975).[5]

---

[5] In *Richards,* Chief Judge Haynsworth distinguished the position he had taken in *Crosson,* concluding that the Supreme Court in *Executive Jet* had expressly disapproved of admiralty jurisdiction in water-skier cases such as *Crosson, Executive Jet, supra,* 409 U.S. 255 at 256 n.5, 93 S.Ct. at 498, 34 L.Ed.2d at 459, but that it had not rejected its prior approval of admiralty jurisdiction in pleasure boat cases generally. *See, Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); *Coryell v. Phipps,* 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943).

531 F.2d at 1146–1147.

Since *Richards v. Blake Builders Supply, Inc., supra,* the Fourth Circuit has reiterated its position in *Richards* that "the settled course of decision in the Supreme Court",

8. *See Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319; *Just v. Chambers,* 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903; and *Cor-*

528 F.2d at 748, that admiralty jurisdiction extended to the operation of pleasure boats[8], was not overruled by the *Executive Jet* decision. In *Lane v. United States, supra,* the owner of a cabin cruiser which sank after colliding with a sunken barge brought suit in admiralty against the United States. Then Chief Judge Haynsworth reviewed his prior decisions in *Crosson* and *Richards* thusly:

> In *Crosson v. Vance,* 4th Cir., 484 F.2d 840, we held that a claim of damages for personal injury by a water skier against the operator of the tow boat was without the admiralty jurisdiction. More recently, however, we have held that other controversies arising out of other mishaps to small pleasure craft in navigable waters are within the admiralty jurisdiction. *Richards v. Blake Builders Supply, Inc.,* 4th Cir., 528 F.2d 745 (decided Nov. 10, 1975). Here Lane was towing a skier, but collisions between vessels in navigation and submerged hulks of wrecked vessels are a traditional concern of admiralty.

529 F.2d at 180.

This Court concludes that the collision here involved, between a vessel in navigation and an abandoned bridge piling, is just as much a traditional concern of admiralty as the collision with the submerged hulk was in *Lane.* Moreover, as the *Kelly* court noted:

> We believe, in any case, that this suit is not merely a "pleasure boat accident case." In fact, the case only tangentially involves boats at all. It primarily involves water rescue operations. The objects of the rescue could just as well have been fatigued swimmers as capsized boaters. The critical question, therefore, is not, as both parties have tended to frame it, whether pleasure boat cases fall within admiralty, but rather whether rescue cases involving the United States Coast Guard fit within this category. Viewing the case in this way, we conclude that

*yell v. Phipps,* 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363.

rescue operations of the Coast Guard conducted on navigable waters do in fact bear a significant relationship to traditional maritime activities for purposes of admiralty jurisdiction.

531 F.2d at 1147. This case as well calls more to light than mere pleasure boating. It involves, for purposes of the alleged wrong committed, the responsibility of the Army Corps of Engineers and the Coast Guard for marking and removing obstructions in navigable waters. Certainly the Corps, as part of its civil regulator functions, assumes the duty of removal of obstructions to navigable waters. This duty is imposed by statute. 33 U.S.C. § 414; *see also* 33 C.F.R. parts 320.1, 320.2(a)–(f), and 322 [9]. These agencies of our Government bear a close relationship to traditional maritime activity. *See Kelly, supra* at 1148. Admiralty jurisdiction is properly invoked on the facts alleged.

### EXCLUSIVE JURISDICTION

■ Finally, plaintiff contends jurisdiction exists under the Federal Tort Claims Act, not the Suits in Admiralty Act, thereby taking the case without the two year statute of limitations (46 U.S.C. § 745, *supra*) contained in the latter.[10] This argument is specious.

The Federal Tort Claims Act contains a specific exception of claims for which the Suits in Admiralty Act provides a clear remedy. 28 U.S.C. § 2680(d) provides:

The provisions of this Chapter (Tort Claims Procedure) and § 1346(b) [*supra*] of this title shall not apply to—

\*     \*     \*     \*     \*     \*

(d) Any claim for which a remedy is provided by §§ 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States.

The Fourth Circuit has plainly held, in the context of a pleasure boat accident suit in admiralty, that this exception to the Tort Claims Act means "that this action *could not have been brought under the Tort Claims Act,* and it is properly maintainable under the Suits in Admiralty Act". *Lane v. United States,* 529 F.2d at 179 (emphasis supplied). And directly on point is the *Kelly* case out of the Second Circuit which, once having decided its pleasure boat accident case stated an admiralty claim, went on to "decide whether it is the type of admiralty claim against the United States which must be brought exclusively under the SIAA within the two year limitation period." 531 F.2d at 1148. It was.

As the court in *Lane* pointed out, 46 U.S.C. § 742 (Suits in Admiralty Act) was amended in 1960 [11] to subject the United States to libels in personam, not just when a government vessel or cargo was involved, "but in every situation in which, if a private person were involved, a proceeding in admiralty could be maintained." 529 F.2d at 179. The *Kelly* decision concurs, "conclud[ing] that the 1960 amendment to 46 U.S.C. § 742 . . . was intended to bring *all admiralty claims* against the United States within the ambit of the SIAA". 531 F.2d at 1149 (emphasis supplied).

Just as in the instant case, the plaintiff in *Kelly* filed suit under the Federal Tort Claims Act rather than the Suits in Admiralty Act. This Court's ruling adopts the conclusion of the Second Circuit in *Kelly* verbatim:

**9.** Internal Corps Regulation ER 1145–2–305 further indicates the Corps' assumption of the responsibility for the removal of obstructions to navigable waters.

**10.** Plaintiff filed his complaint within six months of denial of his claim by the federal agencies here involved. Should this action be appropriate under the FTCA, such filing would be timely. *See* 28 U.S.C. § 2401(b), which provides:

A tort claim against the United States shall be forever barred unless it is presented in

writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

**11.** *Somerset Seafood Co. v. United States,* 193 F.2d 631 (4th Cir. 1951), relied on by plaintiff, was decided prior to the 1960 amendment.

For the reasons expressed above, we hold that decedent's claim should have been brought under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and it cannot be maintained under 28 U.S.C. § 1346(b) because of the express prohibition of 28 U.S.C. § 2680(d). The suit is therefore barred by the provisions of 46 U.S.C. § 745, as it was not commenced under the Suits in Admiralty Act within two years of the date that the cause of action accrued.

531 F.2d at 1149.

The Government's motion to dismiss is granted.

AND IT IS SO ORDERED.