**Abbot Budd Kaufer MEDINA, et al., Plaintiffs,**

**v.**

**David Castañon PEREZ, et al., Defendants.**

**Civ. No. 82–2504.**

United States District Court, D. Puerto Rico.

Nov. 15, 1983.

Edelmiro Salas García, Hato Rey, P.R., for plaintiffs.

Am. Int'l. Ins. Co., Cordero, Colon & Miranda, Old San Juan, P.R., for defendants.

Agustín F. Fortuño, Rodriguez, Padilla & Fortuño, Hato Rey, P.R., for David Castañón Pérez.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action seeking damages arising out of a boating accident. According to the complaint, on August 8, 1982 plaintiff Abbot Budd Kaufer Medina was swimming in Isla Verde public beach approximately 120–125 feet from the shore when he was struck by a pleasure motor boat operated by defendant David Castañón Pérez. As a result of the accident, Kaufer Medina sustained severe injuries. Plaintiffs then commenced an action in the Superior Court of Puerto Rico, Carolina Part and thereafter, they also filed the present action in this court. Jurisdiction is pleaded under 28 U.S.C. Section 1333(1).[1] Defendants have filed a motion to dismiss for lack of admiralty jurisdiction and/or motion to stay.[2]

■ This court's jurisdiction over the instant case depends on whether the law of admiralty extends to accidents involving small pleasure crafts engaged in non-commercial navigation and swimmers in tidal or navigable waters.

The test of admiralty tort jurisdiction is two-pronged. First, in cases of non-tidal waters (e.g. lakes, rivers, etc.) the alleged wrong must occur in navigable waters; in cases of tidal waters, the test of admiralty jurisdiction is the ebb and flow of the tide. *United States v. Stoeco Homes, Inc.*, 498 F.2d 597 (3rd Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). Second, the wrong must bear a significant relationship to traditional maritime activity. *Richardson v. Foremost In-*

*surance Co.*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

■ At the outset, we conclude that the first part of the jurisdictional test is satisfied; the accident occurring in a public beach 120–125 feet from the shore.

■ We turn now to the second requirement and what constitutes traditional maritime activity. In *Executive Jet, supra*, at 270, 93 S.Ct. at 505, a unanimous Supreme Court stated that admiralty was concerned with matters such as maritime liens, limitation of liability, cargo damage, and claims for salvage. Nevertheless, a divided Court in *Foremost* held that "because the wrong [t]here involve[d] the negligent operation of a vessel on navigable waters, [there was] a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction". *Richardson v. Foremost Insurance Co.*, 457 U.S. at 674, 102 S.Ct. at 2658.

On first impression it would seem that *Foremost* supports a finding of federal jurisdiction. But the statement of the Court must be analyzed within the factual context of that case where two pleasure boats collided on the Amite River in Louisiana, resulting in the death of one of the occupants. The Court extended admiralty jurisdiction due to the "potential disruptive impact of a collision between boats on navigable waters ... coupled with the traditional concern that admiralty law holds for navigation". *Id.* at 675, 102 S.Ct. at 2659. Said holding is consistent with the Court's prior ruling in *Executive Jet* where it implicitly recognized admiralty jurisdiction in a *Foremost* situation pointing out that when a collision between vessels occurs, the law of admiralty looks to the navigational rules to determine fault, liability, and all other questions that may arise from such a catastrophe. *See also Lane v. United States*, 529 F.2d 175, 180 (4th Cir.

**1.** Section 1333 Admiralty, maritime and prize cases—

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all

other remedies to which they are otherwise entitled.

**2.** Due to our disposition of the jurisdictional question, we do not reach the arguments supporting the request for stay of proceedings.

1975) ("collisions between vessels in navigation and submerged hulks of wrecked vessels are a traditional concern of admiralty").

Nonetheless, *Executive Jet* noted the absurdity of extending admiralty jurisdiction to cases involving injured swimmers and waterskiers. The Court said at 409 U.S. 255–56, 93 S.Ct. at 498–99:

> If a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom, or if a piece of machinery sustains water damages from being dropped into a harbor by a land-based crane, a literal application of the locality test invokes not only the jurisdiction of the federal courts, but the full panoply of the substantive admiralty law as well. In cases such as these, some courts have adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and traditional forms of maritime commerce and navigation.

This statement was documented in a footnote to a case involving an injury to a swimmer struck by a surfboard, *Davis v. City of Jacksonville Beach, Florida,* 251 F.Supp. 327 (M.D.Fla.1965), and another case involving an injury to a water skier, *King v. Testerman,* 214 F.Supp. 335 (E.D. Tenn.1963). In subsequent cases involving water skiers struck by pleasure crafts various courts have held that the tort involved was not significantly related to traditional maritime activity. *Crosson v. Vance,* 484 F.2d 840 (4th Cir.1973); *Jorsch v. LeBeau,* 449 F.Supp. 485 (N.D.Ill.1978); *Webster v.*

*Roberts,* 417 F.Supp. 346 (E.D.Tenn.1976). We fail to perceive any principled distinction between an accident involving a water skier struck by a boat and a swimmer so injured.[3] Therefore, *Executive Jet's* explicit disapproval of the exercise of admiralty jurisdiction in cases of injured swimmers or water skiers, and its progeny, control our decision today in the case at bar.

*Foremost* did not overrule *Executive Jet,* nor do we believe it intended to diminish its precedential value regarding injured swimmers cases.[4] Had this been a case involving the collision of two boats we would have been compelled to apply *Foremost* and exercise jurisdiction. *See Richards v. Blake Builders Supply, Inc.,* 528 F.2d 745 (4th Cir.1975).[5] However, that is not the situation here. We thus refuse to exercise jurisdiction over a tort involving an injured swimmer.

Clearly such jurisdiction would exceed the purposes of admiralty jurisdiction. In *Crosson v. Vance, supra,* at 840 the Court of Appeals for the Fourth Circuit stated that "[t]he admiralty jurisdiction in England and in this country was born of a felt need to protect the domestic shipping industry in its competition with foreign shipping and to provide a uniform body of law for the governance of domestic and foreign shipping, engaged in the movement of commercial vehicles from state to state and to and from foreign states". *Foremost* made clear, however, that the federal interest in protecting maritime commerce could not be adequately served if admiralty jurisdiction is restricted to commercial activity, but as we have established, such language was

---

**3.** In *Jorsch v. LeBeau,* 449 F.Supp. 485 (N.D.Ill. 1978), the accident occurred after the plaintiff had completed water skiing and was bodily in the water. The boat struck plaintiff while he was floating. The district court noted the distinction from *Crosson v. Vance, supra,* where the accident occurred while plaintiff was being towed by a motorboat. The district court, nevertheless, found that the difference was "immaterial to its conclusion that it lack[ed] subject matter jurisdiction over [the] cause". *Jorsch v. LeBeau, supra,* at 487, fn. 5.

**4.** Even though *Foremost* expressly limited *Executive Jet* to its particular facts, it also reiterated *Executive Jet's* determinations of federal admi-

ralty jurisdiction outside the context of aviation torts. It noted approvingly the specific language of *Executive Jet* cited and relied upon in the body of this opinion. *Foremost, supra,* 457 U.S. at 674, fn. 4, 102 S.Ct. 2658, fn. 4.

**5.** In *Richards,* Chief Judge Haynsworth distinguished the position he had taken in *Crosson* concluding that the Supreme Court in *Executive Jet* had expressly disapproved the extension of admiralty jurisdiction to water skier cases, but that it had not rejected its prior approval of admiralty jurisdiction in cases involving pleasure boats generally. Today we join Chief Judge Haynsworth's position.

originally set forth in the context of a collision between two boats. Undoubtedly, there is an eminent federal interest in maintaining uniform rules of conduct regarding the collision of boats or ships. Such an interest is totally absent in actions involving injured swimmers. In that type of case the paramount interest sought is not to protect maritime commerce but rather to protect the lives of swimmers, water skiers, and bathers in tidal or navigable waters. Unquestionably that is an interest within the realm of state law. "The Federal Government", as stated by Justice Powell dissenting in *Foremost, supra,* at 685, 102 S.Ct. at 2664, "has little or no genuine interest in the resolution of a garden variety tort case".

Additionally, the application of admiralty law to injured-swimmer cases would "impliedly [prohibit] the exercise of state legislative power in an area in which local legislatures have generally been thought competent". Stolz, *Pleasure Boating and Admiralty: Erie at Sea,* 51 Calif.L.Rev. 661, 664 (1963). *See also,* Swaim, *Yes, Virginia, There is an Admiralty: the Rodrigue Case,* 16 Loy.L.Rev. 43, 44 (1969–70) in which it was stated that in admiralty law the term jurisdiction defines both the power of a court to hear and dispose of a certain controversy, and also the power to prescribe rules of decision to be applied by those courts considering the controversy. This is so because a court of admiralty sits solely to administer and apply maritime law. To find jurisdiction in this case would constitute an usurpation of state sovereignty, and a displacement of state responsibility which federal courts should avoid. Such an exercise of jurisdiction would not only burden the federal courts but would also frustrate the purposes of state tort law. *Adams v. Montana Power Co.,* 528 F.2d 437 (9th Cir.1975). In essence, concerns of federalism further mandate that this action be dismissed for lack of admiralty jurisdiction.

Finally, the result we reach today in no way inequitably harms plaintiffs since as stated before, prior to the filing of this action they had filed a similar complaint in the Superior Court of Puerto Rico, Carolina Part, which is competent to hear such matter. Said court denied defendants' motion to stay proceedings and reasserted its jurisdiction over the subject matter and the parties involved. Moreover, co-defendant American International Insurance Co. of Puerto Rico, defendant Castañón's insurer, has consigned the sum of $100,000 in that court.

WHEREFORE, in view of the above, it is ordered that defendants' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction be and is hereby granted, and consequently, the complaint herein is dismissed.

The clerk shall enter judgment accordingly.

SO ORDERED.