Abbot Kaufer MEDINA, et al.,
Plaintiffs, Appellants,

v.

David Castanon PEREZ, et al.,
Defendants, Appellees.

No. 83-1900.

United States Court of Appeals,
First Circuit.

Argued April 3, 1984.

Decided May 2, 1984.

Edelmiro Salas Garcia, Hato Rey, P.R., for plaintiffs, appellants.

Charles A. Cordero, Old San Juan, P.R., with whom Cordero, Colon & Miranda, Old San Juan, P.R., was on brief, for defendant appellee American Intern. Ins. Co. of Puerto Rico.

Agustin F. Fortuno, Santurce, P.R., for David Castanon Perez, et al.

Before BOWNES and ALDRICH, Circuit Judges, and HUNTER,[*] Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Abbot Kaufer Medina and Luis Velez Medina while swimming some 120 feet off a public beach in Puerto Rico, were struck and injured by a small outboard-powered pleasure boat operated by defendant David Castanon Perez. They, along with various family members, sued in the District Court, 575 F.Supp. 168, asserting admiralty jurisdiction. The court concluded that there was none, and dismissed the action. Plaintiffs appeal. We reverse.

Two relatively recent Supreme Court opinions are particularly relevant. In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), a unanimous Court held that the location where the actual injury occurred did not determine the question of admiralty jurisdiction, a ruling that did not surprise a court which had learned the hard way that a dock could be "unseaworthy." [1] In *Executive Jet* a plane, allegedly improperly maneuvered over land, crashed into navigable

---

[*] Of the Western District of Missouri, sitting by designation.

1. *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), reversing *Waterman S.S. Corp. v. Gutierrez*, 1 Cir.,

1962, 301 F.2d 415 (longshoreman slipped on beans spilled on dock by reason of ship's unseaworthiness; known locally as the unseaworthy dock case.)

waters. The Court, seeing no misconduct of a maritime nature, declined to hold that the locale of the injury conferred admiralty jurisdiction. Thereafter, in *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court faced the question whether the maritime nature and locale of an accident resulted in admiralty jurisdiction when there was no commercial activity. Two small outboard-powered pleasure craft had collided on navigable waters. In an application of the "half-full-or-half-empty" approach, the majority ruled that, although there was no commercialism, half-full was enough, while the dissent considered the cup basically empty, regarding the Court as expanding traditional jurisdiction by eliminating a commercialism requirement.

The district court viewed one pleasure craft and a swimmer as a further refinement. In ruling against admiralty jurisdiction, it relied in part on a footnote in *Executive Jet*, more a factual recital than an expression of opinion, that it read as disapproving a case assuming jurisdiction over a suit by a water skier against the operator of his towboat. *See Executive Jet*, ante, 409 U.S. at 255–56 n. 5, 93 S.Ct. at 498–99 n. 5 (citing *King v. Testerman*, 214 F.Supp. 335, 336 (E.D.Tenn.1963)). Principally, however, the court relied on two Fourth Circuit decisions interpreting *Executive Jet*. These decisions, both of which preceded *Foremost*, held, on the one hand, that admiralty jurisdiction did not extend to a suit by a water skier against his towboat operator, *Crosson v. Vance*, 4 Cir., 1973, 484 F.2d 840, and, on the other, that it did extend to suits by pleasure-boat passengers injured when equipment on the boats they were aboard apparently malfunctioned, causing, in one case, an explosion, and, in the other, a collision with a river bank. *Richards v. Blake Builders Supply, Inc.*, 4 Cir., 1975, 528 F.2d 745. Thus, the Fourth Circuit drew a distinction between persons injured on board a boat and those injured outside. The district court adopted this distinction, and, finding none further "between an accident involving a water skier struck by a boat and a swimmer so injured," held that it had no jurisdiction.

Even if this distinction were reasonable after *Executive Jet*, we do not believe it survived *Foremost*. The focus of *Foremost* was whether the wrong was related to "traditional maritime activity," and the Court made clear that the most fundamental of such activities is navigation of a vessel. The wrong alleged here was negligent navigation. There is no requirement that two vessels be involved in order to create admiralty jurisdiction. Nor is this an injured swimmer case such as those cited in *Foremost*, where the swimmer struck a submerged object, or another swimmer. *Foremost*'s citation to *Executive Jet*, for cases with "absolutely no connection to maritime activity," omitted mention of the water-skier case relied upon by the Fourth Circuit and the court below. *Foremost*, 457 U.S. at 674 n. 4, 102 S.Ct. at 2658 n. 4. We understand the district court's concern that the occurrence here may involve no significant federal interest, but this approach to the scope of admiralty jurisdiction was the view of the *Foremost* dissenters. The actor in this case was a vessel, and that is enough. Once given that defendant's boat is not excluded because non-commercial, it should make no difference that plaintiffs were in navigable waters rather than on them. We will leave to another day when an outboard goes out of control, runs ashore, and hits a sunbather. *But cf.* 46 U.S.C. § 740.

*Reversed.*