David OLIVER, Minor by his Guardian
ad Litem, Linda L. OLIVER,
Appellant,

v.

John Rudolph HARDESTY, Appellee.

No. 83–1677.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1984.

Decided Oct. 4, 1984.

Joseph Michael Fullwood, Lexington, S.C. (John E. Duncan, Rogers, Duncan,

Fullwood, & Perrin, Lexington, S.C., on brief), for appellant.

Jeter E. Rhodes, Jr., Columbia, S.C. (Whaley, McCutchen, Blanton & Rhodes, Columbia, S.C., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and HAYNSWORTH, Senior Judge.

WIDENER, Circuit Judge.

The dispositive issue before us is whether a claim of negligent conduct arising from a collision between a 19 foot pleasure boat and a swimmer on navigable waters of the United States states a controversy within the admiralty jurisdiction of the federal courts. Plaintiff seeks review of the district court's order dismissing the action for want of jurisdiction. We are of opinion the case was within the jurisdiction of admiralty, and so vacate and remand for further proceedings.

On June 14, 1981, on Lake Murray in South Carolina, the plaintiff David Oliver, an infant over 14 years of age, was riding a raft towed by a small motor boat driven by his father. At some point in this raft ride, David fell from the raft. During this time, another pleasure boat operated by the appellee, John R. Hardesty, had gotten under way and was towing a skier. While remaining afloat in the water until he could be picked up by his father, David was struck by Hardesty's boat.[1] He brought this action for his injuries allegedly suffered in the collision, claiming negligent operation, and unseaworthy condition, of appellees' motor boat and asserting federal court jurisdiction in admiralty.

Responding to the complaint, Hardesty moved to dismiss the action for want of jurisdiction. In reliance on this court's decision in *Crosson v. Vance*, 484 F.2d 840 (4th Cir.1973), the district court granted the motion to dismiss. *Crosson* was an action

---

**1.** The complaint does not set forth all the specific facts we have recited. Those not contained in the complaint we have taken from defendant's memorandum filed in the district court.

seeking damages for injuries sustained by a waterskier, who sued the operator of the boat towing him, when the operator of the towing motor boat ran the boat into shoal waters. As in the present case, the plaintiff in *Crosson* asserted admiralty jurisdiction. On the basis of the Supreme Court decision in *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), this court in *Crosson* affirmed a district court's dismissal for want of jurisdiction.

The *Executive Jet* case marked a notable development in the law of admiralty jurisdiction. Prior to *Executive Jet,* it had been taken to be the law that the determination of whether a tort was maritime in nature, and thus within the admiralty jurisdiction of the federal courts, depended simply on the locality of the wrong. That is, if the tortious conduct occurred on the navigable waters of the United States, the controversy fell within the admiralty jurisdiction. E.g., *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971).[2]

In *Executive Jet,* however, the Supreme Court modified the locality test. In that case, a small, land-based jet airplane had crashed into Lake Erie following take-off from a nearby airport. The cause of the crash was assigned to the ingestion of birds into the plane's engine apparently while the plane was still on or over the runway. The plaintiff brought suit claiming the airport had been negligent in permitting the birds to endanger the plane's take-off. The plaintiff contended that the damages to the plane suffered upon impact with the navigable waters of Lake Erie gave rise to admiralty jurisdiction.

The Supreme Court, after determining that any alleged negligent act would have occurred over land, held that the mere crashing of a land-based airplane into the navigable waters of the United States will not place the controversy within admiralty jurisdiction, when there was no showing of any connection with maritime commerce or navigation.

Thus the Court in *Executive Jet* added to the locality test a test which required some relationship between the tortious conduct and the traditional maritime activities of commerce or navigation to bring the tort within admiralty. See *Executive Jet,* supra, 409 U.S. at 256, 93 S.Ct. at 498. In rejecting the locality test as the sole condition, the Supreme Court also took issue with lower court decisions which had "adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and the traditional forms of maritime commerce and navigation." *Executive Jet,* supra, at 255–256, 93 S.Ct. at 498. In a subsequent footnote, the Court cited as an example a case involving an injured waterskier. See *King v. Testerman,* 214 F.Supp. 335 (E.D.Tenn. 1963) referred to at 409 U.S. at p. 256, 93 S.Ct. at p. 498.

It was this language and footnote of the Court which prompted us in *Crosson* to deny admiralty jurisdiction. We stated that "we could not uphold the exercise of the jurisdiction in this case without subjecting ourselves to the clear expression of criticism of another court." *Crosson,* supra, at 842. While finding no admiralty jurisdiction in *Crosson,* a case which involved a waterskier suing the operator of his towing boat, we left open the question of whether *Executive Jet* had foreclosed the resort to admiralty in other cases involving the operation of small pleasure craft. *Crosson* at p. 842.

We clarified to some extent the status of pleasure boats two years later in *Richards v. Blake Builders Supply, Inc.,* 528 F.2d 745 (4th Cir.1975). In that case, the court confronted several actions involving injuries sustained by boat occupants in two separate small pleasure boat accidents. Both incidents occurred on navigable wa-

---

**2.** But cf. *Atlantic Transport Co. v. Imbrovek,* 234 U.S. 52, 61–62, 34 S.Ct. 733, 735, 58 L.Ed. 1208 (1914); see *Executive Jet,* 409 U.S. at pp. 258–259, 93 S.Ct. at pp. 499–500.

ters and the plaintiffs asserted admiralty jurisdiction.

In *Richards* we recognized that the *Crosson* decision had been based on the language and footnote in *Executive Jet* indicating disapproval of a decision holding a claim by an injured waterskier against the operator of the towing motor boat to be within the admiralty jurisdiction. *Richards*, supra, at 746, 749. However, we concluded that the disapproval in *Executive Jet* did not extend to all other controversies arising out of the operation of small pleasure craft. We found the small pleasure boats in *Richards* to be vessels in navigation, and that the controversies arose out of their navigation. As a result, the *Richards* court concluded that the *Executive Jet* test, requiring a connection between the tort and the maritime activities of commerce or navigation on navigable waters, had been satisfied, and found the actions to be within the admiralty jurisdiction.

Thus this court in *Richards* recognized that the test formulated in *Executive Jet* does not operate in a per se manner to exclude small pleasure craft from admiralty jurisdiction, although the controversy may involve only them. Yet the *Richards* decision, while making it clear that controversies involving small pleasure craft are within the admiralty jurisdiction, of course did not decide the limits of that jurisdiction in cases involving small pleasure boats and a skier, or swimmer as is the case here.

However, a recent Supreme Court decision agrees with *Richards* and the reasoning of that case and *Richards* guides us here. In *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), an occupant of a small pleasure boat was killed in a collision with another pleasure boat. The decedent's wife brought an action to recover damages from the operator of the other boat.

The Supreme Court, acknowledging the confusion created by *Executive Jet* for pleasure boat cases, held that "a complaint alleging a collision between two vessels on navigable waters properly states a claim within the admiralty jurisdiction of the federal courts." *Foremost*, supra, at 677, 102 S.Ct. at 2660. The Court found that the *Executive Jet* requirement that the wrong have a significant connection with traditional maritime activity was not limited to commercial activities. Rather, the Court stated that

"[b]ecause the 'wrong' here involves the negligent operation of a vessel on navigable waters, we believe that it has sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." *Foremost*, supra, at 674, 102 S.Ct. at 2658.

It placed considerable emphasis on the navigational aspect of the *Executive Jet* test, recognizing that while

"[t]he primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce .... [the] federal interest in protecting commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This intent can be fully vindicated only if *all* operations of vessels on navigable waters are subject to uniform rules of conduct." *Foremost*, supra, at 674–675, 102 S.Ct. at 2658–2659 (emphasis in the original).

Thus in the context of the *Executive Jet* test, the *Foremost* decision reasserted the importance of navigation in establishing a sufficient nexus. The Supreme Court confirmed what was recognized by this court in *Richards;* that is, controversies involving the navigation of vessels on navigable waters may come within the admiralty jurisdiction, although the vessels may be small pleasure boats.

In the present action, defendant argues that *Foremost*, a case involving the collision of two pleasure boats, cannot be used to sustain admiralty jurisdiction in a case such as this involving the collision between a pleasure boat and a swimmer. He also attempts to distinguish the present case from *Foremost* and *Richards* by taking the

position that the injured parties in those cases were occupants of the boats, while the appellant here was in the water. We find the arguments unpersuasive.

The Supreme Court in *Foremost* placed significant emphasis on the importance of governing the navigation of all vessels. As a result, for purposes of determining the applicability of admiralty jurisdiction in this case, we believe the proper emphasis is on the navigation of the pleasure boat involved.

We think the argument that the application of admiralty jurisdiction depends on whether a pleasure boat collides with the hull of another boat or with the body of an individual has nothing to do with the essential issue concerning the operation of the pleasure boat. Moreover, the argument that the exercise of admiralty jurisdiction is determined by whether the injured party was in a boat or in the water at the time of the tortious conduct also has nothing to do with the operation of the boat. In both instances, the injured party is permitted the expectation that the navigation of nearby vessels is being conducted in a reasonable manner.

Just as importantly, this plaintiff was not engaging in a sport in concert with the defendant as was the case in *King v. Testerman,* supra. Had the plaintiff here been engaged in commercial activities while swimming at the same place and time, for example in clearing a net from a propeller, *Foremost Insurance* and *Richards* would doubtless sustain admiralty jurisdiction. We do not think the plaintiff should be worse off merely because he was swimming for pleasure. The negligent operation of the defendant's vessel bears a significant relationship to traditional maritime activities.

Accordingly, the judgment of the district court is vacated, and the case is remanded for further proceedings under admiralty jurisdiction.

VACATED AND REMANDED.