Kevin W. SOUTHER, Appellee,

v.

Gary THOMPSON, and Douglas Souther, Appellants.

No. 84–1532.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1984.

Decided Feb. 7, 1985.

David B. Worthy, Martinsville, Va. (Stone & Worthy, Martinsville, Va., on brief), for appellants.

George O. Burpeau, III, Martinsville, Va. (James W. Haskins, Young, Haskins, Mann, Gregory & Young, P.C., Martinsville, Va., on brief), for appellee.

Before ERVIN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge.

Respondent Kevin Souther, an injured water skier, brought this action in admiralty against Douglas Souther, the operator of a motorboat towing the plaintiff, and against appellant Gary Thompson, a water skier also being towed behind the same boat. D. Souther and Thompson moved to dismiss the action for lack of subject matter jurisdiction. The district judge denied the motion and they appealed. We reverse.

On July 19, 1983, the three parties went water skiing on Philpott Lake in Virginia. Philpott Lake is a navigable waterway constructed and maintained by the Army Corps of Engineers and patrolled by the United States Coast Guard. D. Souther operated the motorboat behind which K. Souther and Thompson were skiing. Thompson allegedly crossed the wake and sprayed water into K. Souther's face causing him to fall and break his right shoulder.

K. Souther brought this action against D. Souther and Thompson in admiralty upon a cause of action for negligence. K. Souther alleged that D. Souther had been negligent by continuing to operate the motor boat when he allegedly knew that Thompson was skiing in an unsafe manner. D. Souther and Thompson moved to dismiss for lack of subject matter jurisdiction, relying on *Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973).

In *Crosson* this court held, on the basis of *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that admiralty jurisdiction does not extend to a claim for personal injuries by a water skier against the allegedly neg-ligent operator of a motorboat for running the motorboat into shoal water thereby causing the skier to be injured.

In the present case, the district judge refused to dismiss the motion, holding that *Foremost Insurance Company v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), controlled and that admiralty jurisdiction existed. He then certified an immediate appeal pursuant to 28 U.S.C. § 1292(b).

In *Executive Jet* the Supreme Court rejected the simplistic locality test for admiralty jurisdiction and held that the wrong must bear a substantial relationship to traditional maritime activity for admiralty jurisdiction to exist. 409 U.S. at 268, 93 S.Ct. at 504. In discussing traditional maritime activity the court used such examples as navigation and its rules, seaworthiness, commerce, maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage. 409 U.S. at 270, 93 S.Ct. at 505.

In its opinion the Supreme Court discussed some of the problems with the locality test:

> Other serious difficulties with the locality test are illustrated by cases where the maritime locality of the tort is clear, but where the invocation of admiralty jurisdiction seems almost absurd. If a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom, or if a piece of machinery sustains water damage from being dropped into a harbor by a land-based crane, a literal application of the locality test invokes not only the jurisdiction of the federal courts, but the full panoply of the substantive admiralty law as well. In cases such as these, some courts have adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and traditional forms of maritime commerce and navigation.

409 U.S. at 255–56, 93 S.Ct. at 498.

As an example of this mechanical application of the strict locality rule, the court in

footnote 5 noted a case involving an injury to a water skier, *King v. Testerman*, 214 F.Supp. 335 (E.D.Tenn.1963). In reliance on this language and the footnote from *Executive Jet*, the Fourth Circuit reached its decision in *Crosson* denying admiralty jurisdiction to a water skier injured because of the alleged negligent operation of the motorboat towing him.

In *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745 (4th Cir.1975), this court refused to read *Executive Jet* as a general questioning of the Supreme Court's earlier opinions which extended admiralty jurisdiction to cases involving pleasure craft. *Richards* involved actions by boat occupants in two separate small pleasure boat accidents. The claims were made by passengers against the operators of the motorboats and admiralty jurisdiction was found. Later we explained *Richards* in *Oliver By Oliver v. Hardesty*, 745 F.2d 317 (4th Cir. 1984), in which we found that:

> "the small pleasure boats in *Richards* [were] vessels in navigation, and that the *controversies arose out of their navigation.* As a result, the *Richards* court concluded that the *Executive Jet* test, requiring a connection between the tort and the maritime activities of commerce or navigation on navigable waters, had been satisfied, and found the actions to be within the admiralty jurisdiction."

745 F.2d at 319 (emphasis added).

■ An allegation of a navigational error appears to be the key to admiralty jurisdiction when dealing with small pleasure craft.

In 1982 the Supreme Court decided *Foremost Insurance Company v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). In holding that the collision of two pleasure boats on navigable waters falls within admiralty jurisdiction, the Supreme Court rejected a requirement that, for the wrong to have a significant connection with traditional maritime activity, the wrong had to involve commercial activities. Instead, the court emphasized the navigational aspect of the *Executive Jet* test. The court held:

In light of the need for uniform rules governing *navigation*, the potential impact on maritime commerce when two vessels collide on navigable waters, and the uncertainty and confusion that would necessarily accompany a jurisdictional test tied to the commercial use of a given boat, we hold that a complaint alleging a collision between two vessels on navigable waters properly states a claim within the admiralty jurisdiction of the federal courts.

457 U.S. at 677, 102 S.Ct. at 2660 (emphasis added); *see also, Oliver by Oliver v. Hardesty*, 745 F.2d at 319 (emphasizing the significant role that controversies involving the navigation of vessels on navigable waters played in *Foremost*).

■ Unlike *Foremost* and *Oliver*, the controversy in this case does not arise out of an alleged navigational error such as occurs when a pleasure craft collides with a swimmer, water skier, reef, or another vessel. In his complaint K. Souther failed to make any factual allegations that the operator of the boat had violated a navigational rule. The alleged negligence was the operator's failure to stop the boat when Thompson started spraying K. Souther with water. This factual situation is indistinguishable from *King v. Testerman, supra,* the case mentioned by the Supreme Court in *Executive Jet* as an example of facts which should not fall within admiralty jurisdiction. The claim of K. Souther, a water skier, against Thompson, the other water skier towed by the same boat, is similar to the example in which the Supreme Court considered the invocation of admiralty jurisdiction to be almost absurd. 409 U.S. at 255, 93 S.Ct. at 498 (quoted *supra* p. 152).

We hold that admiralty jurisdiction does not exist in this case because the controversy between the parties does not arise out of an alleged navigational error. Accordingly, the order of the district court is reversed and the action is dismissed.

REVERSED.