**Sharon SMITH, et al.**

v.

**Rupert Green KNOWLES, Jr.**

**Civ. No. Y-86-699.**

United States District Court,
D. Maryland.

Sept. 8, 1986.

David W. Skeen, Baltimore, Md., Stephen F. White, Baltimore, Md. and Sally B. Gold, Baltimore, Md., counsel for plaintiffs.

C. Russell Fields, Baltimore, Md., counsel for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The widow and minor children of Paul Alonzo Smith brought this action for his wrongful death against defendant Rupert Green Knowles, Jr. The complaint invokes the admiralty jurisdiction of the Court, and alleges that on July 5, 1985, Smith was one of five guests aboard defendant Knowles' 17–foot motorboat when he jumped overboard to urinate and drowned. The complaint alleges that Knowles was negligent because he knew Smith could not swim and had been drinking, but did not offer Smith a life jacket, encouraged him to jump by assuring him that the water was shallow, and failed to take immediate action to rescue Smith. Defendant has filed a motion to dismiss, arguing that admiralty jurisdiction does not extend to the alleged facts of this case. No hearing is necessary. Local Rule 6.

> The Supreme Court has held ... that for admiralty jurisdiction to exist in the federal courts the alleged wrong must (1) occur "on or over navigable waters" and (2) "bear a significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249 [93 S.Ct. 493, 34 L.Ed.2d 454] (1972). These two requirements are known respectively as the "situs" and the "nexus" requirements.

*Hassinger v. Tideland Electric Membership Corp.,* 781 F.2d 1022, 1024 (4th Cir. 1986) (other citations omitted). The complaint alleges that the accident occurred on the navigable waters of the Severn River, and the defendant concedes that plaintiff has met the "situs" requirement. The "nexus" requirement presents considerable difficulties, however.

The Supreme Court's *Executive Jet* decision modified the traditional approach to admiralty jurisdiction, which had looked solely to the locality of the alleged wrong. *Executive Jet's* requirement of "a significant relationship to traditional maritime activity" cast doubt upon the exercise of admiralty jurisdiction over disputes involving small pleasure craft only. *See discussion* in *Oliver by Oliver v. Hardesty,* 745 F.2d 317, 318–320 (4th Cir.1984).

The Fourth Circuit decided two pleasure craft cases in the wake of *Executive Jet.* It read a footnote in the *Executive Jet* decision to disapprove the extension of admiralty jurisdiction over cases involving injuries to water skiers, and denied jurisdiction in *Crosson v. Vance,* 484 F.2d 840 (4th Cir.1973). In *Richards v. Blake Builders Supply, Inc.,* 528 F.2d 745 (4th Cir.1975), the Fourth Circuit held that *Executive Jet* did not invalidate admiralty jurisdiction over pleasure boats *per se,* and upheld jurisdiction in two consolidated cases. In the first case, injured passengers sued the manufacturer and seller of a motorboat that exploded on a pleasure cruise. In the second, an injured passenger sued the owner of a 20–foot outboard for negligent operation of the vessel.

The Supreme Court cast more bread upon the waters in *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), a case involving a collision between two pleasure boats. The plaintiff alleged that one of the boats had been negligently operated, and the Supreme Court upheld the exercise of admiralty jurisdiction. The Court acknowledged that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce...." 457 U.S. at 674, 102 S.Ct. at 2658. The Court seemed to assume that pleasure boats were not "maritime commerce," but held they might impede interstate commerce if they did not follow the uniform "rules of the

road" established by admiralty law. 457 U.S. at 675, and n. 5, 102 S.Ct. at 2658, and n. 5.

The Fourth Circuit has decided four cases involving pleasure boats since *Foremost Insurance.* *See Oliver by Oliver v. Hardesty, supra* (jurisdiction upheld; swimmer alleged negligent operation of boat that hit him); *Souther v. Thompson,* 754 F.2d 151 (4th Cir.1985) (jurisdiction denied; water skier alleged that operator of boat did not respond when another skier towed by the same boat crossed wake and dangerously sprayed the plaintiff, causing him to fall and break shoulder); *Hogan v. Overman,* 767 F.2d 1093 (4th Cir.1985) (jurisdiction upheld; water skier sued operator of boat for swerving to avoid another boat, causing plaintiff injury); *Hassinger v. Tideland Electric Membership Corp., supra* (jurisdiction upheld; representatives of three sailors sued electric corporation that placed uninsulated power line near water's edge and the manufacturer of sailboat with uninsulated mast; sailors ran mast into power line and were electrocuted). In another case involving asbestos shipworkers, the Fourth Circuit also adopted a four-factor test to determine whether the alleged wrong satisfies the nexus test:

(1) the functions and roles of the parties;

(2) the type of vehicles and instrumentalities involved;

(3) the causation and type of injury; and

(4) traditional concepts of the role of admiralty law.

*Oman v. Johns-Manville Corp.,* 764 F.2d 224, 230 (4th Cir.1985).

It is difficult to discern any consistent principles from these cases, but a synthesis may be possible. In the pleasure boat context, the Fourth Circuit's four factors really boil down to two. Factors three and four combine into the "hit a tanker" test. The traditional concept of admiralty law (factor four) is to protect maritime commerce. In *Foremost Insurance,* the Supreme Court apparently assumed that pleasure boats were not "maritime commerce" themselves, but extended admiralty jurisdiction to situations where pleasure boats might interfere with commercial boats. Thus, if the causation and type of injury (factor three) might have damaged or delayed a tanker, jurisdiction would lie. Any boat driving errors fall into admiralty because the negligent operator might have hit a tanker, instead of hitting another boat or a swimmer, or instead of injuring a passenger or a water skier in tow. *Foremost Insurance; Oliver by Oliver; Richards v. Blake Builders,* case two; *Hogan v. Overman.* "An allegation of a navigational error appears to be the key to admiralty jurisdiction when dealing with small pleasure craft." *Souther v. Thompson, supra,* 754 F.2d at 153. Selling faulty pleasure boats or boat equipment might be considered maritime commerce in itself; it also might cause accidents between pleasure boats and tankers. *Richards v. Blake Builders,* case one; *Hassinger.**

A falling plane might hit a tanker, but flying a plane does not bear "a substantial relationship to traditional maritime activity." *Foremost Insurance,* 457 U.S. at 675, n. 5, 102 S.Ct. at 2658, n. 5. Factors one and two of the Fourth Circuit's nexus test telescope into this "substantial relationship" test.

This attempted synthesis leaks. The majority opinion in *Foremost Insurance* analyzed the collision of two pleasure boats in

---

* *Bubla v. Bradshaw,* 795 F.2d 349 (4th Cir.1986) (published), involved the electrocution of plaintiffs' decedent as he was conducting a marine survey for insurance purposes aboard a houseboat. The houseboat had sunk twice and had undergone extensive repairs. The plaintiffs sued the boat's owner, the marina where the boat was docked, and the person who had been hired to repair the boat.

Although the houseboat might have been considered a pleasure boat, the Fourth Circuit did not describe it as such. Instead, the Fourth Circuit analyzed the houseboat in a commercial context: "The instant case touches upon the maintenance and repair of seagoing vessels." Memo. op. at 9. Perhaps this case lends further support to a theory that the commercial outfitting and care of pleasure houseboats are more distinctly commercial than the two boats that collided in *Foremost Insurance.*

terms of a breakdown in navigational rules that might result in "hitting" a tanker. But as a hypothetical it focused on whether the wreckage from a pleasure craft accident would block a tanker's passage at the mouth of the St. Lawrence Seaway. 457 U.S. at 675, 102 S.Ct. at 2658. That hypothetical renders irrelevant the "causation" of the injury (Fourth Circuit factor three), which is the factor that lower courts have paid the most attention to. *Compare Souther v. Thompson* and *Hogan v. Overman.* That hypothetical seems absurd when applied to accidents that occur in broad navigable channels; it also suggests that the sheer size of the wreckage generated by an accident should be a crucial factor in admiralty jurisdiction.

If it is safe to float over the Supreme Court's hypothetical, the "hitting a tanker" test may be a fair reading of *Foremost Insurance.* But that test also relies on stretching hypotheticals to the breaking point. The negligence required to hit a tanker is of the same type, but not the same degree, as the negligence required to hit a swimmer. *Oliver by Oliver.* And should one invent a hypothetical to explain how an uninsulated mast on a Catamaran threatens maritime commerce? *Hassinger.*

Applying an admittedly shaky analysis to the facts of this case, admiralty jurisdiction does not lie. The plaintiffs have not alleged any negligent acts by the defendant that might have resulted in hitting a tanker. The failures of pleasure craft operators to provide life jackets, or to rescue their passengers, will inevitably result in tragedies like this one. But such failures will not impede maritime commerce.

Plaintiffs argue that the defendant encouraged their decedent to jump overboard because he misjudged the depth of the water. They argue that misjudging the water's depth is a classic navigational error, and could result in a ship running aground. Here, however, the defendant's estimate of the water's depth did not affect the navigation of the boat. The defendant might as well have been estimating the depth of a swimming pool.

Even if the "hitting a tanker" test is incorrect, dismissal is the correct result. The facts of this case appear to be closer to the facts in *Souther v. Thompson* than the facts of any Fourth Circuit cases finding admiralty jurisdiction. As a matter of common sense, admiralty jurisdiction was not intended to cover cases like this one.

The Court takes some comfort in the fact that plaintiffs may pursue their remedies in state court. An exercise in rule-making for rule-making's sake seems an inappropriate response to human tragedy.