**In the Matter of the Complaint of Everett A. SISSON, as Owner of the Motor Yacht THE ULTORIAN for Exoneration From or Limitation of Liability.**

No. 86 C 1991.

United States District Court,
N.D. Illinois, E.D.

June 29, 1987.

Reconsideration Denied
Sept. 24, 1987.*

\* *See* 668 F.Supp. 1196.

Warren J. Marwedel, Dennis Minichello, Tribler & Marwedel, P.C., Chicago, Ill., for plaintiff.

Bernard Leon Chase, Michael Snyder, Snyder & Gerard, Jeff Harris, Foran, Wiss & Schultz, John F. Horvath, Conklin & Adler, Ltd., Chicago, Ill., for claimants.

## ORDER

BUA, District Judge.

This order concerns claimants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. For the reasons stated herein, claimants' motion to dismiss is granted.

## I. FACTS

On September 24, 1985, plaintiff's 56–foot pleasure yacht, The Ultorian, was docked at Washington Park Marina in Michigan City, Indiana. A fire erupted on The Ultorian completely destroying the vessel and causing extensive damage to the marina and several neighboring boats. According to allegations made by plaintiff in a related suit against the manufacturer of The Ultorian, the fire was caused by an allegedly defective washer/dryer on board the vessel. The net value of The Ultorian after the casualty was $800. Extensive damage to the marina and vessels in the vicinity of The Ultorian resulted from the fire. The claimant owners of the vessels and marina estimate damages to exceed $275,000.

## II. DISCUSSION

Plaintiff instituted this action for injunctive and declaratory relief seeking to limit his liability to claimants for damages arising out of the September 24 incident. Plaintiff asserts jurisdiction under 28 U.S.C. § 1333 and contends that the Limitation of Liability Act, 46 U.S.C. § 183 [1] lim-

---

1. The Limitation of Liability Act provides in pertinent part:

(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of

860

its his potential liability to $800, the salvage value of The Ultorian. Claimants motion to dismiss plaintiff's action on two grounds. First, claimants assert that admiralty and maritime jurisdiction under § 1333 does not exist in the present case. Second, claimants argue that the Limitation of Liability Act does not apply to pleasure craft. Because this court finds subject matter jurisdiction is lacking, claimants' second argument is not addressed below.

■ As the purpose of plaintiff's action is to limit possible tort liability, this court must analyze admiralty jurisdiction principles applicable to tort cases. Traditionally, federal admiralty jurisdiction in tort cases existed whenever the actionable wrong occurred on a navigable waterway. *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971); *The Plymouth,* 3 Wall. 20, 35–36, 18 L.Ed. 125 (1866). Subsequent decisions of the Supreme Court, however, have added a second prerequisite. *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). To establish admiralty jurisdiction in a tort case today, not only must the wrong occur on navigable waters, but the tort must bear a "significant relationship to traditional maritime activity." *Foremost,* 457 U.S. at 674–75, 102 S.Ct. at 2658; *Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504.

In *Executive Jet,* the Supreme Court addressed whether admiralty jurisdiction existed over tort claims arising from the crash of a small commercial passenger jet into Lake Erie. *Executive Jet,* 409 U.S. at 250, 93 S.Ct. at 495. The cause of the crash was assigned to the ingestion of birds in the plane's engines while the jet was still over the runway. *Id.* Plaintiffs contended that although the alleged negligent conduct of the traffic controllers in failing to warn of the birds occurred on

land, the fact the jet was damaged upon impact with the navigable waters of Lake Erie gave rise to admiralty jurisdiction. *Id.* at 266–67, 93 S.Ct. at 503–04. Rejecting the traditional locality rule as the sole test for determining admiralty jurisdiction, the Court ruled § 1333 jurisdiction existed only when the actionable conduct "bears a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504. Because the wrong complained of by plaintiffs had no connection with "traditional forms of maritime commerce or navigation," the Court concluded admiralty jurisdiction did not exist and ordered plaintiffs' actions dismissed. *Id.* at 272, 93 S.Ct. at 506.

In *Foremost Ins. Co. v. Richardson,* the Supreme Court specifically rejected the contention that admiralty jurisdiction depended on whether the actionable conduct arises in the context of some commercial maritime activity. *Foremost,* 457 U.S. at 674–76, 102 S.Ct. at 2658–59. In that case, the collision of two small pleasure craft on navigable waters resulted in the death of an occupant. *Id.* at 669, 102 S.Ct. at 2655. The decedent's wife instituted a tort action for damages against the operator of the other boat in federal district court asserting admiralty jurisdiction. *Id.* Addressing the assertion that admiralty jurisdiction was limited to situations involving some aspect of commercial maritime activity, the Court explained the federal interest in protecting maritime commerce could not be adequately served if admiralty jurisdiction extended only to those actually engaged in commercial maritime activity. *Id.* at 674–75, 102 S.Ct. at 2658. According to the Court, the federal interest could be fully protected "only if all operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial activity on maritime commerce." *Id.* at 675, 102

any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owners or own-

ers, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. 46 U.S.C. § 183.

S.Ct. at 2658. Thus, the fact noncommercial vessels were involved in the activity leading to the actionable conduct did not preclude the existence of a significant relationship to traditional maritime activity. *Id.* at 676, 102 S.Ct. at 2659. Centering on the fact that the alleged wrong involved the negligent navigation of a vessel on navigable waters, the Court concluded that the tortious conduct had a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction. *Id* at 674, 102 S.Ct. at 2658.

Lower courts applying the two-part *Executive Jet/Foremost* test in tort cases involving pleasure craft focus on the existence of a navigational error to find admiralty jurisdiction. *See Hogan v. Overman,* 767 F.2d 1093 (4th Cir.1985) (allegation that swimmer was injured due to alleged navigational error sufficient to show substantial relationship with traditional maritime activity); *Souther v. Thompson,* 754 F.2d 151 (4th Cir.1985) (no admiralty jurisdiction exists where controversy involving pleasure boats does not arise out of alleged navigational error); *Oliver by Oliver v. Hardesty,* 745 F.2d 317 (4th Cir.1984) (proper emphasis for ascertaining admiralty jurisdiction in cases involving pleasure boats is on the navigation of such vessels); *Medina v. Perez,* 733 F.2d 170 (1st Cir.1984) (admiralty jurisdiction found where alleged negligent navigation of pleasure vessel resulted in injury to swimmer); *Smith v. Knowles,* 642 F.Supp. 1137 (D.Md.1986) (action against owner and operator of small motorboat arising when decedent jumped overboard to urinate and drowned dismissed for lack of admiralty jurisdiction as misjudgment of water's depth was not a navigational error nor a negligent act which might have affected traditional maritime activity). Analyzing the Supreme Court's statements in *Foremost* and *Executive Jet* emphasizing the need for uniform rules governing navigation of vessels on navigable waters, these lower courts concluded that some type of navigational error must be alleged to find a significant relationship with traditional maritime activity when pleasure craft are involved. *Hogan v. Overman,* 767 F.2d at 1094; *Souther v.* *Thompson,* 754 F.2d at 153; *Oliver by Oliver v. Hardesty,* 745 F.2d at 319; *Medina v. Perez,* 733 F.2d at 171; *Smith v. Knowles,* 642 F.Supp. at 1139–40. The rationale for focusing on an alleged navigational error stems from the Supreme Court's reasoning in *Foremost* that although ownership and operation of pleasure boats cannot be viewed as a traditional maritime activity, extension of admiralty jurisdiction is warranted where operation of pleasure craft might interfere with commercial vessels. *Smith v. Knowles,* 642 F.Supp. at 1139, *citing Foremost,* 457 U.S. at 675, 102 S.Ct. at 2658. Thus, as one court observed, the clear import of the *Foremost* decision is that admiralty jurisdiction exists only when the wrongful conduct presents a significant risk of damaging or delaying commercial vessels. *Smith v. Knowles,* 642 F.Supp. at 1139.

Recently, certain courts addressing product liability claims of laborers installing asbestos material in commercial vessels have developed a four-factor test for determining whether the alleged wrong bears a significant relationship to traditional maritime activity. *See e.g., Oman v. Johns-Manville Corp.,* 764 F.2d 224, 230 (4th Cir.1985); *Woessner v. Johns-Manville Sales Corp.,* 757 F.2d 634, 639–41 (5th Cir. 1985), *reaffirming Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973). These four factors include: (1) functions and roles of the parties; (2) types of vehicles and instrumentalities involved; (3) causation and type of injury; and (4) traditional concepts of the role of admiralty law. *Id.* Courts analyzing the tort claims of shipyard employees under this four-part test universally determined that the wrong alleged did not bear a substantial relationship to traditional maritime activity. *Oman v. Johns-Manville Corp.,* 764 F.2d 224, 230 (4th Cir. 1985); *Woessner v. Johns-Manville Corp.,* 757 F.2d 634, 639–41 (5th Cir.1985); *Harville v. Johns-Manville Prod. Corp.,* 731 F.2d 775, 787 (11th Cir.1984); *Myhran v. Johns-Manville Corp.,* 741 F.2d 1119, 1121 (9th Cir.1984). Other circuits addressing similar asbestosis claims under the assertion of admiralty jurisdiction came to the

same result but declined to adopt the four-part test. *Austin v. Unarco Ind., Inc.*, 705 F.2d 1, 11–14 (1st Cir.1983) (focusing on function the injured party was performing at time of injury); *Keene Corp. v. United States*, 700 F.2d 836, 844–45 (2d Cir.1983) (emphasizing defective product was not designed specifically for maritime use). Nonetheless, the four-factor test appears to be the majority position.

Without addressing whether the Seventh Circuit is likely to adopt the four-part analysis, certain difficulties arise in applying this test to tort cases involving pleasure craft. One court analyzing the four-prong test reasoned that when applied to situations involving pleasure craft, the four factors essentially boil down to two: factors three (causation and type of injury) and four (traditional concepts of the role of admiralty law) combine into a "hit the tanker test," while factors one (function and roles of parties) and two (type of vehicles and instrumentalities involved) comprise a "substantial relationship test." *Smith v. Knowles*, 642 F.Supp. at 1139. This synthesis stems from the discussion in *Foremost* concerning the ability of pleasure boats to interfere with commercial vessels. *Id.* According to the *Smith* court, "the traditional role of admiralty law (factor four) is to protect maritime commerce.... Thus, if the causation and type of injury (factor three) might have damaged or delayed a tanker, jurisdiction would lie." *Id.* Regarding factors one and two, the *Smith* court reasoned that although the falling plane in *Executive Jet* might have struck a tanker, "flying a plane does not bear a substantial relationship to traditional maritime activity." *Id.* Although acknowledging its summation of the four-factor test might not be flawless, the court displayed confidence that the "hit the tanker test" was premised on an accurate reading of *Foremost*. *Id.* at 1140. Applying its analysis to the facts before it, the court

concluded the boat owner's error estimating water depth while encouraging a guest to jump overboard did not bear a substantial relationship to traditional maritime activity because such conduct could not result in a collision with a tanker. *Id.* Concluding that even if the "hit the tanker" test was incorrect, the court stated that common sense dictated that admiralty jurisdiction was not intended to apply to cases like the one before it. *Id.*

■ This court shares the view expressed in *Smith v. Knowles* that when applied to pleasure boating incidents, the four-factor test developed in asbestosis cases telescopes into a two-part inquiry: (1) whether the tort involved vehicles or objects of a maritime nature and parties performing some function or role with a substantial relation to traditional maritime activity; and (2) whether the conduct complained of presents a substantial likelihood of impeding commercial vessels. In the present case, no dispute exists that the wrong occurred on navigable waters. Thus, the first *Executive Jet/Foremost* requirement for admiralty jurisdiction is present. Difficulty arises, however, in finding the alleged wrong bears a substantial relation to traditional maritime activity. Here, although the vehicles involved, pleasure boats, are distinctly maritime in nature, the instrumentality blamed for the fire, a washer/dryer, is not. The fact the parties involved are boat and marina owners is of little relevance in this case as this court has no indication of what function or activity the parties were engaging in at the time of the fire. Most importantly, however, the mooring of a pleasure craft with a defective washer/dryer in a recreational marina such as Washington Park presents no substantial likelihood that a tanker would be damaged or delayed. Unlike cases involving pleasure boats where admiralty jurisdiction is recognized,[2] the wrong in the

---

2. Plaintiff asserts *Hassinger v. Tideland Electric Membership Corp.*, 781 F.2d 1022 (4th Cir.1986), compels a finding of admiralty jurisdiction in the present case. This court disagrees. *Hassinger* involved wrongful death actions by estates of three sailors who were electrocuted when the uninsulated mast of their sailboat

struck an uninsulated power line negligently placed over navigable waters by an electric company. *Id.* at 1024. Reasoning that the sailboat was engaged in a navigational function at the time it contacted the power line, and that the placement of the power line created a dangerous impediment to navigation, the court sus-

present case does not involve navigation of a vessel. Other courts addressing assertions of admiralty jurisdiction for injuries occurring while pleasure craft are not in navigation have failed to find any substantial relationship with traditional maritime activity. *See Smith v. Knowles, supra; Montgomery v. Harrold,* 473 F.Supp. 61, 64 (E.D.Mich.1979) (guest asphyxiated by lethal fumes while aboard pleasure craft moored in marina; decedent's estate fails to show substantial relation to traditional maritime activity under four-factor test).

■ Plaintiff, however, contends that similarities between this case and *American Eastern Dev. Corp. v. Everglades Marina, Inc.,* 608 F.2d 123 (5th Cir.1979), and *English Whipple Sailyard, Ltd. v. Yawl Ardent,* 459 F.Supp. 866 (W.D.Pa.1978), compel the conclusion admiralty jurisdiction exists. However, a close reading of both cases indicates that admiralty jurisdiction was premised on breaches of maritime contracts. The *Executive Jet/Foremost* test for admiralty jurisdiction in tort cases does not apply to contract claims. Admiralty jurisdiction over contract claims "depends on whether the contract relates to ships in their use as ships or to commerce or transportation in navigable waters." *Medema v. Gombo's Marina Corp.,* 97 F.R.D. 14, 15 (N.D.Ill.1982), *quoting Ford Motor Co. v. Wallenius Lines, M/V Atl. Cinderella,* 476 F.Supp. 1362, 1365 (E.D. Va.1979).

In *English Whipple,* a sailboat dealer being unable to negotiate payment for repairs to defendant's pleasure boat brought an action in rem against the vessel. *English Whipple,* 459 F.Supp. at 869, 873. The boat owner counterclaimed for breach of contract and negligence. *Id.* Although the decision is devoid of any discussion concerning admiralty jurisdiction, the claim of the party instituting the action clearly arose in contract. Contract claims for repair or maintenance of maritime vessels

are within the admiralty jurisdiction of the federal courts. *See e.g., CTI–Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377 (2d Cir.1982).

Similarly, in *American Eastern,* claims asserted by plaintiff boat owners against the defendant marina sounded in contract. In *American Eastern,* boat owners contracted with a marina for the dry storage of their vessels which were subsequently damaged in a fire set by the marina's president. *American Eastern,* 608 F.2d at 124. Although the boat owners clearly asserted certain tort claims against the marina for the damage to their vessel, it is also clear they premised certain claims on storage contracts with the marina. According to the contract, the marina was required to store the vessels in dry storage racks until the owners desired to use them. *Id.* At such time, the boats would be forklifted into the water and then returned to dry storage at the end of the day. *Id.* Discussing whether the contract for dry storage was maritime in nature, the court reviewed decisions involving maritime liens for docking, wharfage and storage fees.[3] *Id.* at 125. The court found that the distinguishing factor between cases imposing maritime liens for breach of docking, wharfage or storage contracts and those denying such liens was whether the vessels were completely removed from navigation. *Id.* Reasoning that the nature of the storage contracts in its case cut against the conclusion the boats were removed from navigation, the court ruled that the dry storage contracts fell within the court's admiralty jurisdiction. *Id.*

Significantly, the *American Eastern* opinion contains no mention of *Executive Jet* or of the four-factor maritime nexus test which was originally formulated by the Fifth Circuit in *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973). Although *American Eastern* does not state the specific theories of recovery asserted by the boat

---

tained admiralty jurisdiction. *Id.* at 1027–28. The focus of the *Hassinger* court on navigation and impediments to navigation clearly makes any application to the present case inappropriate.

**3.** Contracts to provide wharfage or storage of a vessel are maritime in nature, and breach of such agreements are cognizable in admiralty. *Selame Assoc., Inc. v. Holiday Ins., Inc.,* 451 F.Supp. 412, 418 (D.Mass.1978).

owners, it is apparent that boat owners were relying in part on rights and duties arising from the dry storage contract. Because the contract created a bailment relationship each time the boats were removed from the water and placed in the marina's dry storage racks, the marina, as bailee, had a duty to use reasonable care to protect the bailors from loss. Breach of this duty to exercise reasonable care provides both a contract claim and a tort claim. *Holmes v. Freeman*, 23 Conn.Sup. 504, 185 Atl.2d 88, 91 (Conn.App.Ct.1962) (liability for damage to bailed property may spring either from tort or from contract). Once finding admiralty jurisdiction over the boat owners' contract claims, the *American Eastern* court was empowered by principles of pendent jurisdiction to entertain the tort claims. *See Medema v. Gombo's Marina Corp.*, 97 F.R.D. 14, 15 (N.D.Ill.1982) (boat owner sues in contract and tort for damage to boat at marina in winter storage resulting from fire; court finds admiralty jurisdiction over contract claims arising out of bailment relationship and sustains negligence claim under pendent jurisdiction principles).

The findings of admiralty jurisdiction in *American Eastern* and *English Whipple* were not based on claims sounding in tort, but were instead premised on the parties' contractual relationships. As such, those cases do not aid plaintiff in his argument that admiralty jurisdiction exists in the present case. Because this court finds that wrong alleged fails to bear a substantial relationship to traditional maritime activity, admiralty jurisdiction is lacking and claimants' motion to dismiss must be granted.

### III. CONCLUSION

For the foregoing reasons, claimants' motion to dismiss for lack of subject matter jurisdiction is granted.

IT IS SO ORDERED.